Carnegie et al., Trustees, Appellants, *v.* Pittsburgh Board of Property Assessment, Appeals and Review, Appellant.

Argued March 28, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused June 30, 1947.

*Bennett Rodgers,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for City of Pittsburgh.

*Nathaniel K. Beck,* County Solicitor, *Marjorie Hanson Matson, James M. Guffey, 2nd,* Assistant County Solicitors, for County of Allegheny.

*Frank W. Ittel* with him *John W. Wishart* and *Reed, Smith, Shaw & McClay,* for Andrew Carnegie, 2nd et al., Trustees.

OPINION BY MR. JUSTICE PATTERSON, May 28, 1947:

The Carnegie building and land located on the south side of Fifth Avenue between Smithfield Avenue and Grant Street, Pittsburgh, were assessed $683,250.00 and $804,960.00, respectively, by Allegheny County for tax purposes for the years 1943, 1944, and 1945. Trustees of the Estate of Lucy C. Carnegie, appellants in Appeal No. 118, and owners of said property, appealed to the Board of Property Assessment Appeals and Review,

asserting that the valuation placed upon said building was excessive. Appeal was taken to the Court of Common Pleas of Allegheny County from the Board's refusal to modify said assessment. The City of Pittsburgh, appellant in Appeal No. 116, was permitted to intervene. After hearing, the trial judge reduced the assessment of the building $133,250.00. Exceptions filed by the owners, the City of Pittsburgh, and the County of Allegheny, appellant in Appeal No. 117, were dismissed by the court *en banc*. These appeals followed.

The City and the County contend that the court below erred in reducing the valuation upon the building for the reason that there was no competent testimony of actual value to challenge the *prima facie* case established by the introduction of the assessment record. The owners contend that (1) the court below erred in considering rental value under the lease, and (2) the only property subject to taxation was the difference between the market value of the property with the lease attached, and the value of the lease itself. The appeals of the City and the County must be sustained.

The owners called three real estate experts, Brown, MacDowell, and Abernathy, each of whom stated values for the property as it presently existed and with the lease excluded. Brown determined a value of $528,000.00 without the lease. He was asked: "Q. What, in your opinion, is the actual value of this property in the fall of 1942 without the lease on it to the Carnegie Company? A. I figure the property would have a land value of $528,000." McDowell testified: "Q. What, in your opinion, is the actual value of this property, that value being 1942, with all the factors considered, including the lease on the premises? A. $935,000." [1] He further testified:

---

[1] "'A. This is the basis of my judgment, Mr. Ittel, and not an absolutely determining factor. I took the remainder of the lease as approximately fifty years and I tried to see it as a prospective buyer would see it. The building is obsolete now and in 1995 the buyer

"Q. What, in your opinion, was the actual value of this property in the fall of 1942 without the present existing lease on the premises? A. $600,000." Abernathy testified as follows: "Q. Mr. Abernathy, have you formulated an opinion as to the actual value of the Carnegie property in the fall of 1942, taking the property as you found it, that is, subject to the lease from the Carnegie heirs to the now Carnegie-Illinois Steel Company? A. I have. Q. What is that value? A. $950,000. Q. Now, Mr. Abernathy, if, in the fall of 1942, the Carnegie-Illinois Steel Company had purchased this property from the Carnegie heirs, after that purchase, what would you have said was the fair market value or actual value of that property? . . . A. $500,000." [2]

The Park Building, Nixon Theatre, Equitable Building, and the land assessment of all properties on Smithfield Street between Oliver Street and Sixth Avenue were considered as allegedly similar properties. The court blow properly held that not one of these properties is comparable in size, location, use, improvement or income. Opinions of value based upon dissimilar properties are not competent evidence.

---

would say that the building would be worthless. Now, the value of the ground in 1995 is an unknown figure but a well informed investment buyer would consider trends in downtown values, and we can read as we run. We know there is a decentralization going on in the downtown section of Pittsburgh and all sections, so a well informed buyer would require a discount in his mind on ground value. He would require a complete amortization of the building's value over 52 years and if you completely amortize the building's value for 52 years, a certain sum has to be set aside annually for such amortization.' "

The term of this lease was 100 years from April 1, 1895; the lessor was Lucy C. Carnegie and the lessee was The Carnegie Steel Company, Limited.

[2] This opinion was determined considering "the rental value of land as vacant for parking lot purposes and the rental value of a three-story building upon the lot." He also compared the Carnegie Building with the Nixon land "if it were vacant and available for development—if they were both vacant and available."

The experts called by the owners did not base their estimates of value upon realities. They sought rather to speculate regarding probable values by assuming the existence or non-existence of facts. They sought to project themselves into the not-immediate future and assumed facts which might or might not occur. Estimates of value thus determined are speculative and conjectural and are not competent evidence of present actual value. The court below was in error in admitting evidence of that nature.

On appeal, findings of the court below determining the value of property for the purpose of taxation have great weight and will not be set aside unless clear error appears. Where, however, as here, they are based on incompetent testimony of the land owners' expert witnesses, they cannot be permitted to stand: *Park Tax Assessment Case,* 350 Pa. 421, 39 A. 2d 601; *Chatfield v. Board of Revision of Taxes,* 346 Pa. 159, 29 A. 2d 685.

What this Court said in *Chatfield v. Board of Revision of Taxes,* supra, 163-164, is applicable here: " 'It is proper to consider for what purpose it [the property] may be used to advantage, in order to determine for what price it will sell. It may be salable as a site for the erection of a hotel, a factory, a dwelling or a wharf, but it is not proper to lay . . . proof of what the hotel or other structure would cost, together with proof of the value of the lot with such structure upon it, and treat the difference between these sums as the value of the lot. Such a method would be speculative and fanciful . . . They proposed to submit . . . the conjecture of the witnesses as to what the plaintiff's lands would be worth, or what their market value would be at some unknown future time . . . Such testimony does not rise even to the standard of an opinion. It is a mere guess, with no substantial foundation upon which to rest . . . An estimate of what property will be worth at a future day, or in an altered condition, is entirely without guide or measure, and must be wholly fanciful.' See also:

Rothenberger v. Reading City, 296 Pa. 423; Kleppner v. Pgh., B. & L. E. R. R. Co., 247 Pa. 605."

Introduction of the assessment record established *prima facie* the validity of the assessment: *Liebman v. Board of Revision of Taxes*, 355 Pa. 42, 44, 48 A. 2d 866. "In the absence of competent testimony to show its incorrectness, or that the action of the board was arbitrary, and in disregard of the owners' rights, it is conclusive": *Chatfield v. Board of Revision of Taxes*, supra, 166-167, 29 A. 2d 685. The valuation fixed by the court below was not based upon any competent evidence of record. The incorrectness of the Board's assessment has not been proven and it must, therefore, be reinstated.

The owners' appeal, No. 118, cannot be sustained. While rental value of a property may never constitute the exclusive standard for determining market value, it is, nevertheless, a factor to be considered: *Park's Appeal*, 334 Pa. 193, 195, 5 A. 2d 561.

Appeal No. 118 is dismissed. Appeals Nos. 116 and 117 are sustained; the decree of the court below is reversed and the assessment of $683,250.00 made by the Board of Property Assessment Appeals and Review is restored and affirmed, costs to be paid by the trustees of the Estate of Lucy C. Carnegie.