**EXPRESSWAY 95 BUSINESS CENTER, LP, Appellant**

v.

**BUCKS COUNTY BOARD OF ASSESSMENT and Bensalem Township School District.**

Commonwealth Court of Pennsylvania.

Argued March 5, 2007.

Decided April 3, 2007.

Jenel R. Marraccini, Jenkintown, for appellant.

Thomas J. Profy, III, Langhorne, for appellee, Bensalem Township School District.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge.

OPINION BY Judge PELLEGRINI.

Expressway 95 Business Center, LP (Taxpayer) appeals from an order of the Court of Common Pleas of Bucks County (trial court) sustaining the Bucks County Board of Assessment's (Board) determination of the fair market value of Taxpayer's three tax parcels for tax years 2004, 2005 and 2006.

Taxpayer owns three tax parcels in Bensalem Township, Bucks County, Pennsylvania, on which 10 industrial buildings are located.[1] For the 2004 tax year, the Board assessed the three tax parcels to show a combined fair market value of $13,776,285.[2] After Taxpayer filed an appeal, the Board reduced the assessment.[3] Taxpayer then filed an appeal from the Board's decision

---

1. The 10 industrial buildings are collectively known as the "Expressway 95 Business Center" with mailing addresses of 3370 Progress Drive; 3392 Progress Drive; 3412 Progress Drive; 3430 Progress Drive; 3448 Progress Drive; 3466 Progress Drive; 3494 Progress Drive; 3520 Progress Drive; 3580 Progress Drive; and 3599 Marshall Lane.

2. Tax Parcel No. 02–072–043–008 was assessed at a total value of $7,980,000; Tax Parcel No. 02–075–043–009 was assessed at a total value of $3,504,857; and Tax Parcel No. 02–075–098 was assessed at a total value of $2,291,428, for a total fair market value of $13,776,285.

3. The Board modified its decision by reducing its assessment for Tax Parcels 02–075–043–009 to $105,000 and No. 02–075–089 to $73,260, but not reducing its assessment for Tax Parcel No. 02–072–043–008, which remained at $279,300. Nowhere is it provided in the record what the actual fair market value was after the Board reduced the assessment.

to the trial court arguing that the tax assessments were excessive. The Bensalem Township School District (School District) filed a notice of intervention.

Before the start of the trial in November 2005, Taxpayer served the School District with interrogatories and a request for production of documents on May 3, 2004. When two months passed without a response, Taxpayer filed a motion to compel on June 15, 2004, which was granted by the trial court. Because the School District failed to comply with the trial court's order, Taxpayer filed a motion for sanctions on July 26, 2004. The School District then supplied Taxpayer with an appraisal report, and the motion for sanctions was withdrawn by letter dated September 20, 2004.

Once the trial began with the introduction of the assessment records, Taxpayer's counsel stated to the trial court that only tax year 2004 was at issue,[4] but it was able to provide a fair market value for tax years 2005 and 2006 because it was the same for those years as tax year 2004.[5] The trial court initially agreed that tax year 2004 was the only year at issue, but later stated that all the tax years outstanding at the date of the trial were the subject of the appeal because the appeal for one year automatically acted as an appeal for all subsequent appeals.[6] After the trial

court made that ruling, Taxpayer's counsel indicated that Taxpayer was not prepared to go forward regarding an appeal for tax years 2005 and 2006 because "we had just taken an appeal for tax year 2004, which is what [Thomas] Myers (Myers) [Taxpayer's expert] has testified to. Therefore, he hasn't prepared a report for 2005 and 2006." (Reproduced Record at 155a.)

Taxpayer then offered the expert testimony of Myers, its certified real estate appraiser, who was employed by CB Richard Ellis, Inc. He testified that he prepared a report, explained in detail how he arrived at his valuation, and utilizing the income capitalization approach, determined the tax valuation for tax year 2004 for all three tax parcels was $9,000,000. Myers mentioned that there had been a prior appraisal report on the property done by the company's New York office before he began his employment of which he had only seen a few pages. When Myers was asked if he had an opinion as to the value of the property for tax years 2005 and 2006, he stated that *he believed* the market value of the property had not appreciably changed, but without having completed a full analysis, he "would have to say it would be the same as what he rendered" in his report regarding the 2004 taxes. (Reproduced Record at 165a.)

At the conclusion of Taxpayer's case, the School District made a motion to dismiss [7]

---

4. Counsel stated: "When we took the appeal, it was for tax year 2004. That was the only tax year at the time that the appeal was taken." (Reproduced Record at 106a.)

5. *See* Reproduced Record at 104a.

6. Section 518.1(b) of the General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–518.1(b). That section provides:

If a taxpayer has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board,

as provided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court. This provision shall be applicable to all pending appeals as well as future appeals.

7. The trial court did not hold the motion to dismiss in abeyance as the School District suggests. The trial court explained:

Frankly, whether or not my decision on '04 changes the appraised value of this proper-

the appeal of the assessments for tax years 2005 and 2006 because Taxpayer offered no evidence that would overcome the Board's assessment. The trial court denied the motion stating "it is a mandatory matter that I review not only the year that is now before me, ..., [but] that I also make a decision with regard to subsequent years which are ripe for decision at the time of the hearing. Certainly, as we sit here today, 2005 and 2006 are ripe because those bills have gone out and the tax year is here now." (Reproduced Record at 152a.)

George R. Sengpiel, M.A.I., S.R.A. (Sengpiel), also an expert real estate appraiser, was then called by the School District. He testified that he, too, had prepared a report and explained his method of arriving at the tax valuation for tax year 2004. He determined the tax valuation for tax year 2004 for all three tax parcels to be at $11,050,000 for the fee simple interest using the comparable sales approach, and $11,670,000 using the income approach. His final opinion of value was $11,300,028. Because the trial court denied the School District's motion to dis-

miss the appeal of the assessment of tax years 2005 and 2006, he also gave his opinion of the fair market value for tax years 2005 and 2006. For tax year 2005, he valued the property at $12,290,000, and for tax year 2006 at $12,560,000, and explained his methodology for arriving at those figures as well. Throughout his testimony, Sengpiel explained that there had been some mistakes in calculations and some typographical errors on the appraisal report he had provided to Taxpayer and explained the reasons for them to the trial court.

■■■ Finding the School District's expert's testimony "convincing and persuasive" and Taxpayer's witness' testimony not believable,[8] the trial court determined that the total fair market value for tax year 2004 for the three parcels was $11,300,028.[9] For tax years 2005 and 2006, the trial court dismissed Taxpayer's appeal because it failed to produce competent, credible and relevant evidence for those tax years to overcome the *prima facie* evidence of the reduced fair market value set by the Board, which had the effect of leaving that value in place whatever it was.

---

ty will, in my opinion, I think, potentially affect my decision with regard to future years. Now, I know that there is testimony on the record from Mr. Myers that in his opinion the fair market value has remained the same for the past two years through this year. And the question simply is at this point, at the motion to dismiss stage, whether or not there is sufficient evidence to overcome prima facie the value established by the governing body. I will overrule the motion to dismiss at this time and go forward on all three years, and I'll make a decision then at the end of this case on all three years.
(Reproduced Record at 249a–250a.)

8. The trial court noted that Sengpiel had a degree in real estate; had been in the business of real estate appraisal for 24 years; 90% of his appraisal practice was in Bucks County; he had an M.A.I. membership (Member of

the Appraisal Institute) of which only 8,000 of the 100,000 real estate appraisers in the United States received; he possessed the S.R.A. designation; he was an expert witness in various State and Federal Courts, Zoning Boards, and the Bucks County Board of Assessment Appeals; and he had an extensive list of clients and major projects in which he performed prior appraisals. (Trial court's October 17, 2006 opinion at 13–14.) The trial court found Myers lacking in credibility because there were numerous discrepancies in his testimony, particularly related to the prior assessment report prepared by the New York office of his employer.

9. The trial court determined that for Tax Parcel No. 02–072–043–008, the fair market value was $6,897,657; for Tax Parcel No. 02–075–043–009, the fair market value was $2,593,114; and for Tax Parcel 02–075–089, the fair market value was $1,809,257.

Taxpayer filed a motion for post trial relief, which the trial court denied,[10] and this appeal by Taxpayer followed.[11]

## I.

Taxpayer contends that the trial court erred by not reducing the Board's tax assessments for tax years 2005 and 2006 because the only evidence of record for those tax years was the School District's expert's opinion of value which was less than those assessments. The School District contends that it was always Taxpayer's burden to offer competent evidence to overcome the assessment, which it never did. Because Taxpayer did not offer evidence to overcome the assessment, the School District contends that the burden never shifted to it, making its expert's opinion of value irrelevant.

In a tax assessment appeal, the burden initially is on the Board, which it satisfies by presenting its assessment records into evidence. Once presented, a *prima facie* case is established of the validity of the assessed value of property. *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 209 A.2d 397 (1965); *Koppel Steel Corporation v. Board of Assessment Appeals of Beaver County*, 849 A.2d 303 (Pa.Cmwlth.2004). Once the *prima facie* case is established, the burden then shifts to the taxpayer to present sufficient, competent, credible and relevant evidence of the fair market value of the property to rebut the validity of the assessment. *Deitch.* "It is not enough to merely present evidence from a qualified expert. The evidence must be *sufficient to rebut* the validity of the assessment which means the evidence must be (1) believed in the sense that the trial court accepts the veracity of the expert based on, for example, his demeanor; and (2) relevant and competent in the sense that it is not dubious, but legally and factually sound so that it is of practical value to the court in its effort to arrive at the fair market value." *Craftmaster Manufacturing, Inc., v. Bradford County Board of Assessment Appeals*, 903 A.2d 620, 627 (Pa.Cmwlth.2006). Estimates of value that are speculative and conjectural are not competent evidence of present actual value. *Appeal of Carnegie*, 357 Pa. 138, 53 A.2d 425 (1947); *see also Chatfield v. Board of Revision of Taxes*, 346 Pa. 159, 29 A.2d 685 (1943) (testimony of taxpayer's expert as to property's future worth was too speculative to rise to standard of an opinion.) After the evidence is presented, the trial court is "to independently determine the fair market value of the parcel on the basis of the competent, credible and relevant evidence presented by the parties." *Westinghouse Electric Corporation v. Board of Property Assessment of Allegheny County*, 539 Pa. 453, 463, 652 A.2d 1306, 1311 (1995).

Taxpayer did not provide the probative evidence that would overcome the assessments because the trial court found its expert's testimony not "believable." In any event, when asked if he had an opinion

10. At the same time that it filed its motion for post trial relief, Taxpayer filed an appeal with this Court which we discontinued by order dated August 17, 2006.

11. Our scope of review in tax assessment appeals is limited to determining whether the trial court abused its discretion, committed an error of law or rendered a decision unsupported by the evidence. *Willow Valley Manor,* *Inc. v. Lancaster County Board of Assessment Appeals,* 810 A.2d 720 (Pa.Cmwlth.2002). The trial court is the ultimate finder of fact when performing a *de novo* review, and it maintains exclusive province over matters involving the credibility of witnesses and the weight afforded the evidence. *In re Appeal of Penn–Delco School District,* 903 A.2d 600 (Pa. Cmwlth.2006).

as to the value of the property for tax years 2005 and 2006, Myers stated that *he believed* the market value of the property had not appreciably changed, but without having completed a full analysis, he "would have to say it would be the same as what he rendered" in his report regarding the 2004 taxes. (Reproduced Record at 165a.) Because all that Taxpayer offered regarding the fair market value for tax years 2005 and 2006 was speculative, even if he had been found credible, and because there was nothing more, we agree with the School District that Taxpayer failed to meet its burden to overcome the assessment for tax years 2005 and 2006.

■■■■ The issue then becomes whether the trial court erred in not adopting Sengpiel's opinion of value for tax years 2005 and 2006 rather than reinstating the Board's assessment. Taxpayer argues, and we agree, that when the trial court found Sengpiel credible and utilized his report to find the proper assessment for tax year 2004, it then should have also utilized his report for the other outstanding tax years. Sufficient, competent evidence as to the value of the property which eliminates the presumption that the Board's assessment is correct does not have to come from the party challenging the assessment; it can come from any party. Once Taxpayer's motion to dismiss was denied and the School District offered Sengpiel's credible testimony that his opinion of value for tax year 2005 was $12,290,000 and $12,560,000 for tax year 2006, his opinion took away the presumption that the Board's value was correct.

Because the trial court erred by utilizing the Board's assessments for tax years 2005 and 2006 rather than the School District's figures for those years, we must remand the matter to the trial court to determine fair market value for those years. *See Green v. Schuylkill County Board of Assessment Appeals*, 565 Pa. 185, 772 A.2d 419 (2001).

## II.

Taxpayer also contends that the trial court abused its discretion by not following Pa. R.C.P. No. 4003.5(c) [12] and by accepting the School District's expert's testimony when it was based on a document not provided to Taxpayer and which was materially inconsistent with the appraisal report provided to Taxpayer during discovery.

■■■■ Initially, we note that the Pennsylvania Rules of Civil Procedure do not apply to tax assessment appeals. *In re Mackey*, 687 A.2d 1186 (Pa.Cmwlth. 1997). Further, in the absence of a statewide rule or a local rule of court, it is within the sound discretion of the trial court whether to allow or refuse discovery in tax assessment appeals. *Tanglwood Lakes Community Association v. Pike County Board of Assessment*, 164 Pa.Cmwlth. 170, 642 A.2d 581 (1994). Here, the trial court allowed discovery in granting Taxpayer's motion to compel the production of documentation. During discovery, Taxpayer and the School District exchanged their experts' appraisal reports.

12. Pa. R.C.P. No. 4003.5(c) provides:
To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, the direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto. However, the expert shall not be prevented from testifying as to facts or opinions on matters on which the expert has not been interrogated in the discovery proceedings.

The documents which Taxpayer alleges were not provided to it during discovery and the information which was inconsistent with what was testified to by Sengpiel at the hearing was actually the same appraisal report from which Sengpiel testified at the hearing as well as the "back-up documentation." Taxpayer alleges that the appraisal report Sengpiel used at the hearing contained handwritten interlineations that were not provided on the report provided to Taxpayer during discovery, and the back-up documentation was not provided to Taxpayer at all. Because of those differences, Taxpayer contends that they were different documents,[13] and it was prejudiced because it only became aware of the differences in the reports when Sengpiel testified at the hearing.

While the law is well established that experts may only testify at trial to matters that are within the fair scope of their pretrial report, *Chanthavong v. Tran*, 452 Pa.Super. 378, 682 A.2d 334 (1996), there is no hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his pretrial report. *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.*, 348 Pa.Super. 285, 502 A.2d 210 (1985). In this case, the trial court determined that Sengpiel had not exceeded the scope of his pretrial report, and that the School District had produced all of the documents to the trial court that Sengpiel had relied upon because the appraisal report that the School District provided to Taxpayer was the identical report that Sengpiel utilized at the hearing before the trial court and the same report offered into evidence, with the exception that the appraisal report Sengpiel used at the hearing had notes in it that he had made and also contained changes where he found mistakes. Not only did Sengpiel *explain to the trial court's satisfaction* that there were typos and miscalculations in the report and why he had made other changes in the report,[14] but regarding any "back-up

13. Specifically, Taxpayer alleges that Sengpiel testified that he chose a factor of $42.50 per square foot, but the report provided to Taxpayer indicated that he used $45 per square foot; he testified that he did not perform an inspection of the inside of the property prior to the date of valuation, but the report given indicated that he did inspect the property; he testified that parcel No. 02–075–043–009 was actually 5.6462 acres, although page 11 of the report given to Taxpayer indicated it was 4.7095 acres; he testified that he actually performed only three sales comparisons, but the report stated that he used four sales comparisons; he testified that he never provided any analysis of comparable rentals, but the report indicated that the correlation of the comparable rentals was based upon an analysis of comparable rentals; he testified that the leasing commission made up six percent of the annualized re-tenanting costs when the report Taxpayer had stated that they made up five percent; he testified that the second sales comparison actually had an indicated unit P/SF factor of $50.78 to yield a $34,373 difference in value, but the report indicated that the second sales comparison had an indicated unit P/SF factor of $50.92 to yield a $38,900,000 consideration.

14. In footnote 7 of the trial court's opinion, it stated:

With Intervenor's referenced documents in its possession and subject to review, Appellant's counsel continued to insinuate that discovery was incomplete. For example, page 21 of the appraisal report contained an arithmetic error which was corrected by Mr. Sengpiel. Counsel responded: "Once again, Your Honor, there keeps coming up documents that I have never seen before. I have repeatedly throughout this case asked for copies of all documents in the case, and every time we turn around, there is another document that's sprung upon us at the last minute." (N.T. 3/17/06, P.M., 2–3). Thereafter, Appellant's counsel undertook a painstaking examination of Mr. Sengpiel which purpose was to discredit his testimony by insinuating that Intervenor withheld vital information. For a second time coun-

documentation," Sengpiel explained that there was none on the items that Taxpayer had questioned, and the trial court found him credible.

 Even if Pa. R.C.P. No. 4003.5(c) were applicable, Taxpayer's argument would be equally unsuccessful. The purpose of that rule is to "prevent the submission of incomplete ... reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefore.... The primary purpose of the Rule is to avoid unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony.... The question is whether the discrepancy between the expert's pre-trial report and his trial testimony is of a nature that would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response. The opposing party must suffer prejudice as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error."

*Daddona v. Thind,* 891 A.2d 786, 805 (Pa. Cmwlth.2006). "In determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, a trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness.... An expert's trial testimony that constitutes a reasonable explanation or even an enlargement of the expert's written words may be deemed to fall within the coverage of 'fair scope.'" *Id.* at 805–806. Clearly, Taxpayer was not prejudiced by Sengpiel's appraisal report or the testimony because Taxpayer was able to provide its own expert report for the properties not only in response, but despite any report by Sengpiel on behalf of the School District. That it chose not to provide tax reports for years 2005 and 2006 was a decision it made, perhaps unwisely. Consequently, the trial court properly determined that the value of the property for the 2004 tax year was $11,300,028.[15]

---

sel questioned Mr. Sengpiel about Page 21 and again the witness explained that the new page 21 was the same exhibit as contained in his report but corrected due to a mathematical computational error. *Id.* at 29–331. Moreover, the computation correction improved Appellant's position by $20,000. Counsel criticized Mr. Sengpiel for inspecting the subject property and surrounding area but not inspecting the interior of the property prior to completing the September 15, 2003 appraisal report. *Id.* at 37–44. The witness explained that Page 13 of his report indicated that "[i]nformation pertaining to sizes and descriptions was obtained from the owner's appraisal prepared by Thomas Myers, dated July 31, 2003." *Id.* at 39. The witness further testified that he found Mr. Myers' description of the interior of the property to be "credible and reliable." *Id.* at 40. Here again, counsel attempted to discredit Mr. Sengpiel's testimony by suggesting that his use of descriptive information contained in the re-

port of Appellant's own expert witness was somehow suspect.

15. Taxpayer also accuses the trial court of bias because the trial court allegedly allowed the admittance of certain documents into evidence by the School District which were not provided to Taxpayer prior to trial. Not only did the School District indicate that there was no "back-up documentation," but the trial court rectified any problem with obtaining evidence when it issued two orders. On February 10, 2006, it directed Taxpayer to provide the School District with any and all appraisals and backup documentation prepared by C.B. Richard Ellis, Inc. from 1999 to the present. The School District was ordered to provide Taxpayer with all notes, records, documents and backup information obtained and used by Sengpiel in preparing his appraisal summary report, his two supplemental reports, and his final appraisal report. The second order was issued on February 16, 2006, requiring Taxpayer to turn over to the School District any and all appraisals with

Accordingly, the order of the trial court fixing a value for tax year 2004 is affirmed, but is vacated as to tax years 2005 and 2006 and those years are remanded for the trial court to enter an order consistent with this opinion.

## *O R D E R*

AND NOW, this 3rd day of April, 2007, the order of the Court of Common Pleas of Bucks County, dated August 17, 2006, fixing a value for tax year 2004 is affirmed, but is vacated as to tax years 2005 and 2006 and those years are remanded for the trial court to enter an order consistent with this opinion.

backup documentation. Not only was there no evidence of bias, but the trial court made every effort to ensure that both sides were provided with all of the evidence they requested.