931 A.2d 122 (2007)
Ali A. MASALEHDAN & Audrey G. Masalehdan, Husband and Wife, Appellants
v.
ALLEGHENY COUNTY BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW
Ransom E. Towsley & Tina M. Towsley, Husband and Wife, Appellants
v.
Allegheny County Board of Property Assessment, Appeals and Review
Daniel O. Brandeis & Jennifer T. Brandeis (Husband and Wife), Appellants
v.
Allegheny County Board of Property Assessment, Appeals and Review.
Commonwealth Court of Pennsylvania.
Submitted on Briefs May 25, 2007.
Decided August 16, 2007.
*123 Gregory A. Biernacki, Pittsburgh, for appellants.
Ira Weiss, M. Janet Burkardt, and Robert Max Junker, Pittsburgh, for appellee, City of Pittsburgh School District.
BEFORE: SMITH-RIBNER, Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.
OPINION BY Judge LEAVITT.
In a consolidated appeal, Ali and Audrey Masalehdan, Ransome and Tina Towsley, and Daniel and Jennifer Brandeis (collectively, Taxpayers) appeal three orders of the Court of Common Pleas of Allegheny County (trial court) denying their respective tax assessment appeals. At issue are the assessments of three residential properties in the City of Pittsburgh that had their base year valuations as of January 1, 2002, increased by the Allegheny County Board of Property Assessment, Appeals and Review (Board) after they were challenged by the City of Pittsburgh's School District. In two of the appeals, the trial *124 court concluded that the evidence presented by Taxpayers did not overcome the prima facie validity of the Board's base year valuation; in the third, the trial court made its own determination of the proper base year valuation of January 1, 2002. In this case, we consider the proper comparable sales methodology to use in a base year valuation appeal. Taxpayers contend that in such an appeal, an expert appraiser may not consider comparable sales that take place after the base year valuation date.

BACKGROUND
In September 2002, the Masalehdans purchased a home for $350,000. At the time of purchase, the property was assessed at $252,400. The School District appealed the 2003 assessment, and the Board increased the assessment to $343,500. The Masalehdans appealed, and a Special Master was appointed by the court to hear the appeal.
The Masalehdans presented the expert testimony of Mark Ackerman, an appraiser, who opined that the base year valuation of the property as of January 1, 2002, was $330,000 and, thus, the base year valuation for each of the tax years in question: 2003, 2004 and 2005. To reach this opinion, Ackerman used a sales comparison method[1] in which he considered only comparable property sales that occurred prior to January 1, 2002. He explained his reasons for not considering sales that took place after January 1, 2002:
You have to replicate the knowledge and capacity that the assessment office had as of the date of the last countywide reassessment and sorrowfully, nothing that happens after that fact can be taken into consideration because it didn't exist. There was a cut-off date when values and data and methodology was constructed to create the base year values. And nothing that happens after that is relevant. And that's why I didn't consider it. I know that it conceptually gets hard, but you have to put blinders on. That's the way the process works.
Reproduced Record at 19a (R.R. ___). In his view, comparable property sales after January 1, 2002, were "irrelevant . . . [and not to] be considered," in arriving at a base year value of the property as of January 1, 2002. R.R. 18a.
The School District presented the testimony of its expert appraiser, Lou Fabian, who also used a comparable sales method but in doing so, considered property sales after January 1, 2002. He then rendered an opinion on the fair market value of the Masalehdan property for each of the three tax years in question. He opined that the fair market value was $360,000 as of January 1, 2003; $370,000 as of January 1, 2004; and $380,000 as of January 1, 2005. The Special Master recommended an assessment of $360,000 for tax years 2003, 2004 and 2005, and the Masalehdans filed objections to the Special Master's report with the trial court.
On July 25, 2002, the Towsleys purchased a home for $385,000; its assessment was $239,400. The School District appealed, and the Board increased the assessment to $385,000. The Towsleys appealed. Before a Special Master, the Towsleys presented testimony of Ackerman, who, again, relied on a sales comparison *125 methodology, using only property sales that occurred prior to January 1, 2002. Ackerman opined that the fair market value of the property as of January 1, 2002, was $315,000 and, thus, the base year valuation for each of the three tax years in question: 2003, 2004 and 2005. The School District's appraiser, Fabian, again opined on the fair market value of the property. He found it to be $395,000 as of January 1, 2003; $407,000 as of January 1, 2004; and $419,000 as of January 1, 2005. The Special Master recommended an assessment for tax years 2003, 2004 and 2005 consistent with the School District's appraiser's opinion. The Towsleys filed objections with the trial court.
On June 27, 2003, the Brandeises purchased a home for $575,000; it was assessed at $389,400. The School District appealed, and the Board increased the fair market value of the property to $575,000. The Brandeises appealed. Before the Special Master, the Brandeises presented the expert testimony of Ackerman, who opined that the fair market value of the property as of January 1, 2002, was $460,000 and, thus, the base year valuation for each of the tax years in question: 2004 and 2005. Once again, his opinion did not take into account any sales after January 1, 2002. The School District's expert, Fabian, again opined on the fair market value of the property. He found it to be $575,000 as of January 1, 2004, and $600,000 as of January 1, 2005. The Special Master recommended an assessment consistent with the School District's evidence, and the Brandeises filed objections with the trial court.

OBJECTIONS
With respect to the Masalehdan and Towsley appeals, the trial court rejected the conclusions of both experts. The court reasoned that when a property owner elects to base its appeal solely on the base year valuation, the only issue to be decided is the correct fair market value of the property as of the date of the base year valuation, in this case January 1, 2002. The court rejected the testimony of the School District's expert because he did not offer a base year valuation opinion. Instead of opining on the fair market value as of January 1, 2002, the School District's expert opined on the fair market value of the property for each tax year in question. The court rejected the testimony of Taxpayers' expert because his conclusion excluded any comparable sales that occurred after January 1, 2002. The trial court reasoned that a comparable sale taking place close in time to the valuation date of January 1, 2002, was relevant evidence. The sales of the Masalehdan and Towsley properties, perhaps the best evidence of their fair market value, took place within a few months of the January 1, 2002, valuation date. Taxpayers offered no authority, legal or professional, why those sales should not be considered in establishing a fair market value as of January 1, 2002. Concluding that Taxpayers' evidence did not overcome the prima facie validity of the assessment of the Board, the trial court affirmed the Board's assessed value for years 2003, 2004 and 2005 with respect to the Masalehdan and Towsley properties.
In the Brandeis appeal, the trial court again rejected the testimony of the School District's appraiser because he did not offer an opinion relevant to a base year valuation. The trial court gave some weight to Taxpayers' expert because in determining the 2002 base year value he considered comparable sales that took place in 2001, close in time to the January 1, 2002, base year valuation date. However, the trial court did not accept the opinion of Taxpayers' expert because it excluded any sales that took place after January *126 1, 2002. This was error, in the trial court's view, especially with respect to the July 2003 sale of the property to the Brandeises for $575,000. The trial court found the 2002 base year fair market value to be $525,000, thereby modifying the Board's base year valuation of $575,000 as of January 1, 2002.

APPEAL
On appeal,[2] the Taxpayers argue that the trial court erred in rejecting their evidence and denying their objections to the Special Master's recommendation. In support, they identify three specific errors by the Special Master and by the trial court. First, they assert it was error not to accept Ackerman's expert opinion since his was the only testimony relevant to the dispositive issue, i.e., the fair market value of the property as of January 1, 2002. Second, they assert that the trial court erred in holding that sales occurring after January 1, 2002, were relevant to the fair market value of a property on January 1, 2002. Third, they assert that the trial court erred by relying on post-January 1, 2002, sales because that methodology violated the "principle of uniformity." Taxpayers' Brief at 37.
The heart of this appeal is what evidence may be considered in an assessment appeal challenging a base year valuation. Section 10(e) of the Second Class County Assessment Code states as follows:
(e) Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio.
Act of June 21, 1939, P.L. 626, as amended, 72 P.S. § 5452.10. (Assessment Code). A "base year" is defined as:
the year upon which real property market values are based for the most recent county-wide revision of assessment of real property, or other prior year upon which the market value of all real property of the county is based. Real property market values shall be equalized within the county and any changes by the board shall be expressed in terms of such base year values.
Section 1a of the Assessment Code, added by the Act of December 13, 1982, P.L. 1186, 72 P.S. § 5452.1a. Thus, in an appeal brought under Section 10(e), the fair market value of property must be determined as of the base year valuation date. Taxpayers argue that, logically, this means that evidence of comparable sales that take place after the base year valuation date is not competent, and the trial court erred in holding otherwise.
As a preliminary matter, we note that it is the role of the trial court to determine the credibility of witnesses and to assign weight to the evidence presented. However, there is a difference between credibility as a matter of personal veracity and as a matter of substantive reasonableness. As our Supreme Court has explained:
The language chosen by the trial court . . . implies that its evaluation of the expert's testimony involved a credibility determination. In this regard, it is important to distinguish between credibility as a matter of personal veracity and as a matter of the substantive reasonableness *127 of a witness's testimony. While the trial court's determinations concerning the former are unreviewable by an appellate court, the same is not true of the latter. See McKnight [Shopping Center, Inc. v. Board of Property Assessment, Appeals and Review of Allegheny County], 417 Pa. [234] at 240, 209 A.2d [389] at 392 [(1965)] (rejecting the trial court's conclusion that expert testimony was not credible, where such conclusion rested on an incorrect factual assumption). . . .
Green, 565 Pa. at 209 n. 11, 772 A.2d at 434 n. 11. Here, the trial court did not question the personal veracity of either party's expert witness but, rather, the substantive reasonableness of each expert's testimony.[3] Accordingly, we next consider whether the trial court erred in rejecting the substantive reasonableness of the appraiser's opinion presented by Taxpayers.
Taxpayers contend that the UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE (USPAP), which sets forth the generally accepted standards for professional appraisals,[4] supports their expert's position that sales after January 1, 2002, are irrelevant. Statements on Appraisal Standards are issued to clarify the USPAP.[5] The Statement on Appraisal Standard No. 3 relates to retrospective appraisals, and it states in relevant part as follows:
A retrospective appraisal is complicated by the fact that the appraiser already knows what occurred in the market after the effective date of the appraisal. Data subsequent to the effective date may be considered in developing a retrospective value as a confirmation of trends that would reasonably be considered by a buyer or seller as of that date. The appraiser should determine a logical cut-off because at some point distant from the effective date, the subsequent data will not reflect the relevant market. This is a difficult determination to make. Studying the market conditions as of the date of the appraisal assists the appraiser in judging where he or she should make this cut-off. In the absence of evidence in the market that data subsequent to the effective date were consistent with and confirmed market expectations as of the effective date, the effective date should be used as the cut-off date for data considered by the appraiser.

(emphasis added). Taxpayers' Brief at 29.[6] Taxpayers rely heavily on SMT-3, but this reliance is misplaced.
Statement SMT-3 expressly provides that data generated after a transaction "may be considered" to develop a retrospective value, and it directs the appraiser to study the market as of the date of the *128 appraisal in order to determine a "logical" cut off date after which subsequent comparable market sales will no longer be relevant. Taxpayers' expert did not follow these steps but, rather, arbitrarily selected January 1, 2002, as the cut-off date, on the apparent premise that the market changed completely on January 2, 2002. The appraiser did not explain why evidence of comparable sales after January 1, 2002, including the sale of the subject properties, did not confirm market expectations, which would be the only basis not to use this information under SMT-3. In short, SMT-3 does not support Taxpayers' claim but reveals the flaws in their expert's opinion.
The Assessment Code is also instructive here. It states, in relevant part, as follows:
In arriving at actual value, the price at which any property may actually have been sold, either in the base year or in the current taxable year, shall be considered but shall not be controlling.
Section 4(a.2) of the Second Class County Assessment Code, 72 P.S. § 5452.4(a.2) (emphasis added). The legislature did not limit relevant sales to those that take place before a base year valuation date. To the contrary, a sale in the "current taxable year" of the property in question shall be considered. We hold, therefore, that the trial court did not err in rejecting Taxpayers' expert evidence for the stated reason that it failed to consider relevant comparable sales, including the sale of the property subject to the assessment being challenged.
The Taxpayers next argue that the trial court had to accept their expert's appraisal because his was the only appraisal that related to a base year valuation. The School District, in defending against Taxpayers' appeal, offered a different fair market valuation for each tax year in question. However, because Taxpayers challenged the base year valuation, the appropriate valuation date was January 1, 2002, and the trial court properly rejected the School District's expert. This did not mean, however, that the trial court was required to accept the conclusions of Taxpayers' expert. Even if there had been no opposing case presented, the trial court was free to find that Taxpayers failed to overcome the prima facie validity of the Board's assessment. See, e.g., Appeals of Mathies Coal Co. and Consolidated Coal Co., 435 Pa. 129, 138, 255 A.2d 906, 910 (1969) (testamentary evidence on the value of coal in place properly rejected because the coal was given no value); Appeal of Carnegie, 357 Pa. 138, 143, 53 A.2d 425, 427 (1947) (estimates of value which were speculative and conjectural were not competent evidence of actual value and properly rejected).
The trial court, sitting as the trier of fact in an assessment appeal must explain the reasons for its decision. Westinghouse Electric Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County, 539 Pa. 453, 464, 652 A.2d 1306, 1312 (1995). Here, the trial court fully explained why it did not credit the expert testimony of the Taxpayers. In brief, the trial court rejected the testimony of Taxpayers' expert because he considered only comparable sales prior to the assessment date and did not explain why comparable sales taking place after the assessment date, including the sale of the subject properties, were not relevant evidence. In addition, the court noted that Taxpayers did not provide any authority for their methodology.[7] The trial court *129 was not obligated to accept the opinions of Taxpayers' expert simply because it was the only one that opined as to the fair market value as of January 1, 2002, and we find no error.
Finally, Taxpayers argue that the trial court's use of comparable sales that took place after January 1, 2002, violates the Uniformity Clause of the Pennsylvania Constitution.[8] In this, they rely on Downingtown Area School District v. Chester County Board of Assessment Appeals, 590 Pa. 459, 913 A.2d 194 (2006). In Downingtown, the Supreme Court ruled that it violates the Uniformity Clause to have some properties assessed at 100 of their market value and others at 86. This is not a Downingtown case because Taxpayers did not bring a common level ratio type appeal. More importantly, Taxpayers did not preserve this issue. They cannot argue, for the first time on appeal, that the trial court's evidentiary rulings violated the Uniformity Clause. PA. R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Bell v. Berks County Tax Claim Bureau, 832 A.2d 587, 594 (Pa. Cmwlth.2003).
For these reasons, we affirm the trial court.

ORDER
AND NOW, this 16th day of August, 2007, the above-referenced orders of the Court of Common Pleas of Allegheny County, dated October 21, 2007, in the above captioned matters are hereby AFFIRMED.
NOTES
[1] The sales comparison approach, also known as the market data approach, the approach most useful for appraising residential property, compares the subject property to other similar properties which have been sold, giving consideration to the size, age, physical condition, location, neighborhood, extra amenities, date of sale, lot size, style of building, unique features and type of financing. Finter v. Wayne County Board of Assessment Appeals, 889 A.2d 678, 680, n. 5 (Pa.Cmwlth. 2005).
[2] Our review of tax assessment matters is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. Daugherty v. County of Allegheny, 920 A.2d 936, 938, n. 4 (Pa. Cmwlth.2007). While the weight of the evidence is before the appellate court for review, the trial court's findings of fact are entitled to great weight and will be reversed only for clear error. Green v. Schuylkill County Board of Assessment Appeals, 565 Pa. 185, 196-197, 772 A.2d 419, 426-427 (2001).
[3] If a trial court rejects an expert's testimony based on the demeanor of the witness, an appellate court cannot review that credibility determination. However, if the trial court rejects an expert's testimony for specified reasons, an appellate court may review the validity of those reasons. The taxpayers argue that because the Special Master did not state that Taxpayers' appraiser was not credible, the trial court on review could not, on the same record, determine otherwise. The flaw in this argument is that the trial court's decision did not turn on the personal veracity of Taxpayers' expert but on the reasonableness of the expert's methodology.
[4] USPAP contains the standards for all types of appraisal services: real estate, personal property, business and mass appraisal. http://www.appraisalfoundation.org/s_appraisal/sec.asp? CID=68&DID=97
[5] http://commerce.appraisalfoundation.org/html/2006ÜSPAP/toc.htm
[6] Statement on Appraisal Standards No. 3 (SMT-3); http://commerce.appraisalfoundation.org/html/2006ÜSPAP/smt3.htm.
[7] Taxpayers also contend that the trial court engaged in impermissible fact finding by establishing a base year valuation of the Brandeis property. In their Brief, they suggest the trial court relied on the testimony of the School District's expert, which they contend was error because that opinion was not competent. The trial court expressly rejected the School District's expert, leaving this argument of Taxpayers without a foundation. The trial court increased the valuation offered by Taxpayers' expert "because of his failure to give any consideration to any sales after January 1, 2002, including the sale of the subject property for $575,000 in July 2003." Memorandum and Order of Court, dated October 21, 2006. The trial court relied on the actual sale of the property. In determining fair market value, a trial court may properly give more weight to a comparable sale than that given by the testifying expert. Green, 565 Pa. at 207, 772 A.2d at 433. There is no error.
[8] PA. CONST. art. 8, § 1 states, in relevant part, that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."