**Rivera v. Scaffidi**

C.P. of Lehigh County, No. 012-C-4597

*Kevin Kelleher*, for plaintiff.
*Candy Barr Heimbach* and *Michelle Wilson*, for defendants.

JOHNSON, *J.*, Oct. 10, 2014—

## I. Introduction

Given the unusual procedural posture of the defendants' current request for summary judgment, a brief review of the relevant procedural history is warranted. By order dated March 4, 2013, this court established a deadline of December 5, 2014 for the end of discovery and a deadline of February 5, 2014 for the production of plaintiff's expert reports. After the failure of plaintiff to produce an expert report supportive of her claims, the defendants filed a motion for summary judgment on March 12, 2014. In response to the defendants' motion for summary judgment, the plaintiff requested an additional period of time to produce an expert report to substantiate her claims. By order dated April 23, 2014, this court allowed the plaintiff additional time and required plaintiff to submit answers to the motion for summary judgment, with the plaintiff's expert report attached, by May 15, 2014.

Plaintiff ultimately served an expert report and curriculum vitae of Bruce M. Kaufman, M.D. upon counsel for defendants on May 14, 2014, but did not file any answer or expert report with the court as required by this court's April 23, 2014 order. On that basis, on May 30, 2014 this court entered an order granting the defendants' motion for summary judgment. As a result, the plaintiff filed a motion for reconsideration on June 2, 2014. In response, on June

24, 2014, the defendants filed the response of defendants, John J. Scaffidi, Jr., M.D. and Total Womens Health Care, Inc., To plaintiff's motion for reconsideration which raises new matter asserting that the expert report of Bruce M. Kaufmann, M.D. is insufficient to support the claims in this case and seek summary judgment on that basis. The defendants also waived their previous argument seeking summary judgment on the basis that the plaintiff failed to submit an expert report by the deadline. Given the defendants' waiver and the fact that the plaintiff served the defendants with the expert report on May 14, 2014, this court vacated its May 30, 2014 order granting summary judgment. As a result of this procedural history, this court scheduled and heard argument on the issues surrounding the sufficiency of the plaintiff's expert report on August 22, 2014.

## II. Analysis

Presently, four questions raised in the new matter contained the response of defendants, John J. Scaffidi, Jr., M.D. and Total Womens Health Care, Inc., To plaintiff's motion for reconsideration filed on June 24, 2014, remain for this court's decision:

1. Whether summary judgment should be granted because the fair scope of the plaintiff's expert report does not support the claims for negligence;

2. Whether summary judgment should be granted because the theory of negligence for an allegedly improper technique or position is at variance with the pleadings;

3. Whether summary judgment should be granted

because the fair scope of the plaintiff's expert report does not support the claim for lack of informed consent; and

4. Whether summary judgment should be granted because the plaintiff's expert report should be barred as improper evidence.

Pennsylvania Rule of Civil Procedure 1035.2(2) states that summary judgment shall be entered, "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Furthermore, all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment. *Penn Center House, Inc. v. Hoffman*, 553 A.2d 900 (Pa. 1989). It is with this standard in mind that this court reviews the previously listed four questions.

1. Whether summary judgment should be granted because the fair scope of the plaintiff's expert report does not support the claims for negligence:

"[T]o prevail in a medical malpractice action, a plaintiff must 'establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.'" *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322 (Pa. Super. 2007) (quoting *Toogood v. Owen J. Rogal, DDS, P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (alterations in original). "Because the negligence of a physician encompasses matters

not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. 2005) (quoting *Toogood*, 824 A.2d at 1145). Expert testimony is required because a jury usually lacks the knowledge required to determine factual issues of medical causation, the degree of skill, knowledge and experience required of a physician, and a breach of a standard of care. *Id.* at 566-67.

Furthermore, Pennsylvania Rule of Civil Procedure 4003.5(c) provides that, where an expert opinion has been developed through discovery, the expert's direct testimony at trial "may not be inconsistent or go beyond the *fair scope* of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report or supplement thereto." (Emphasis added). According to the 1978 explanatory comment, the *fair scope* requirement contained in Pa.R.C.P. 4003.5 is intended to, "...prevent incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefor[e]..." Pa.R.C.P. 4003.5. Essentially, the *fair scope* analysis turns on unfair surprise to the opposing party. *See Expressway v. Bucks County Bd. of Assess.*, 921 A.2d 70, 78-79 (Pa. Commw. 2007). In a medical malpractice action, the report must sufficiently apprise the opposing party of the expert's theory such that the opponent can prepare a meaningful response, including a rebuttal witness. *Brodowski v. Ryave*, 885 A.2d 1045, 1065-66 (Pa. Super. 2005) (*en banc*). However, an expert is entitled to expect that the report will be read by

qualified experts on the other side and is not required "to give a basic primer on medicine." *Schaaf v. Kaufman*, 850 A.2d 655, 666-67 (Pa. Super. 2004).

In this case, the first issue is whether the fair scope of the Kaufmann report establishes the prima facie elements of a medical malpractice action. If the report fails to establish the *prima facie* elements, then the fair scope rule will bar further testimony at trial and the plaintiff will be unable to prove the elements of her claim. After careful scrutiny of the report and upon careful review of the arguments of the parties, three potential negligence theories come to light: (a) negligent documentation, (b) negligence in the decision to perform the November 2, 2010 diagnostic laparoscopy, and (c) negligent selection of techniques used to perform the November 2, 2010 diagnostic laparoscopy.

a. Negligent documentation

The Kaufmann report states, "There is confusing reporting of the method of securing the pneumoperitoneum.... There is not mention of the position of the patient during the effort at pneumoperitoneum, whether supine or whether head down position was used. This can be signficiant." However, and without regard to the lack of a cause of action for negligent documentation in Pennsylvania, the Kaufmann report no where else states a standard for this type of documentation and never describes how this "confusing" documentation caused any of the harm suffered by the plaintiff. The previously quoted two sentences represent the entire discussion of documentation made in the Kaufmann report. Because the report fails to set out the *prima facie* elements, this court finds that any negligence theory centered on medical

documentation must be barred by the fair scope rule.

b. Negligent decision to perform the November 2, 2010 diagnostic laparoscopy

Next, the Kaufmann report, on its last page, mentions, "The decision of whether to perform the surgery and the techniques used led to the death of Mrs. Santiago." The remainder of the report concerns itself with criticizing the technique selected to perform the diagnostic laparoscopy, but no where else in the report does Kaufmann criticize the decision to perform the diagnostic laparoscopy in the first instance. This type of conclusory, incomplete statement in an expert report does not fairly apprise the opposing side of the expert's opinions and basis for those opinions. Because the Kaufmann report never sets forth any type of negligence theory in support of the conclusory statement, which criticizes the decision to perform the diagnostic laparoscopy at all, this court finds that any negligence theory centered on that theory must be barred by the fair scope rule.

c. Negligent techniques used to perform the November 2, 2010 diagnostic laparoscopy

Lastly, the Kaufmann report criticizes the technique chosen to perform the November 2, 2010 diagnostic laparoscopy and suggests two alternative techniques, the "Hasson technique" and "Palmer's Point." It is worth noting that the standard of care in medical malpractice actions is, first and foremost, that which is reasonable under the circumstances. *Collins v. Hand*, 246 A.2d 398 (Pa. 1968). After reviewing the relevant medical history, the Kaufmann report explains, "The creation of a pneumoperitoneum along with the insertion of trochars

can result in significant injuries. More than 50% of trochar related injuries to bowel occur on initial entry." The report goes on to highlight that the presence of abdominal adhesions increase the risk to bowel injury. Additionally, the report cites two risk factors that increase the chances of abdominal adhesions, obesity and a previous laparotomy or midline incision. Reading these statements in context with the medical history initially reviewed by the Kaufmann report, seems to indicate that both of these risk factors were present in this case.

Furthermore, the report describes two entry techniques, the "Hasson technique" and "Palmer's Point," which reduce the risk of injury to a patient with the potential for adhesions. Specifically, the report states:

> The Hasson technique uses an umbilical incision, with careful dissection down to the entry into the peritoneal cavity under direct vision, with then placement of the trochar to secure pneumoperitoneum. Care is taken to insure that there is no bowel attached to the peritoneum prior to trochar introduction. The technique eliminates blind puncture with a needle or a trochar.

> An alternative site for access to the abdominal cavity such as Palmer's point needs to be strongly considered in those patients with suspected adhesions.... This site is recommended to reduce the risk of bowel injury in patients with prior abdominal surgery.

In summation, the report states:

> With her multiple medical risk factors, every care must be made to avoid surgical complications that could be prevented by prudence in planning. The decision of

whether to perform the surgery and the techniques used led to the death of Mrs. Santiago.

Based upon my education, training, and experience, my professional opinion is that Dr. Scaffidi's treatment of the patient did not meet the accepted standard of medical care. With a reasonable degree of medical certainty, the patient suffered the previously explained hospital course and death as a direct and proximate result of Dr. Scaffidi's professional negligence.

Reading the Kaufmann report as a whole, this court finds that the fair scope of the report covers the prima facie elements and that the report fairly apprises the defense of Kaufmann's opinion that, given the circumstances, Dr. Scaffidi's selection of technique for the November 2, 2010 diagnostic laparoscopy breached the standard of care and that breach caused the death of Mrs. Santiago.

Additionally, and in response to the argument that Kaufmann's statement of certainty, "Based upon my education, training, and experience, my professional opinion is that Dr. Scaffidi's treatment did not meet the accepted standard of medical care," does not rise to the required standard, this court does not find the statement so inadequate as to bar Kaufmann's testimony at trial. While an expert witness cannot express an opinion unless the witness can testify to a reasonable degree of medical certainty, the witness is not required to recite "reasonable degree of medical certainty" nor any other talismanic language. *See Vicari v. Spiegel*, 936 A.2d 503, 510 (Pa. 2007), *aff'd on other grounds* 989 A.2d 1277 (Pa. 2010) ("an expert's opinion will not be deemed deficient merely because he or she failed to expressly use the specific

words, 'reasonable degree of medical certainty'").

For the foregoing reasons, the plaintiff will be permitted to proceed at trial on the theory of a negligent technique alone and all other theories of negligence are barred by the "fair scope" rule.

2. Whether summary judgment should be granted because the theory of negligence for an allegedly improper technique or position is at variance with the pleadings:

Next, the defendants argue that the theory of negligence contained in the Kaufmann report is at variance with the pleadings. The case of *Reynolds v. Thomas Jefferson University Hospital*, 676 A.2d 1205 (Pa. Super. 1996), is instructive. *Reynolds* states that a variance exists where, contrary to the fundamental principle of good pleading and practice, the proof fails to materially correspond to the allegations in the complaint. *Id.* at 1209. If a variance is found between proof and allegation, then the party will be precluded from introducing the evidence that is inconsistent with the allegations made by that party. *Id.*

However, the Reynolds court also notes:

The modern rules of pleading and practice are relatively liberal... Consequently, the impact of variance may be diminished by the preference for a liberal if not informal evaluation of pleadings emphasizing the determination of cases based upon their merits rather than based on mere technicalities, which policy, for example, may allow a party to cure a variance by offering, during or after trial, to amend the pleadings to conform to the proof.

In the same vein, the *Reynolds* court cites, *Laursen v.*

*General Hospital of Monroe County*, 431 A.2d 237, 239-40 (Pa. 1981), for the proposition that, "amendments of pleadings...should be liberally allowed to secure a determination of cases on their merits, provided that the granting of the amendment would not introduce a new cause of action." *Id.* A new cause of action does not exist if plaintiff's amendment merely adds to or amplifies the original complaint..." *Id.*

In the present case, Paragraph 25(A) of the plaintiff's amended complaint states, "The decedent's death was proximately caused by the carelessness and negligence of the defendant, John R. Scaffidi, M.D. in one or more of the following ways: (A) In that he perforated the bowel during the course of performing the laparotomy..." Upon review, this court does not find the theory contained in the Kaufmann report that Dr. Scaffidi punctured the bowel due to an improper technique at variance with the previously quoted pleading. Rather, the Kaufmann report sets out to prove exactly what the amended complaint alleges; Dr. Scaffidi's negligence during the performance of the laparotomy caused the bowel puncture, which ultimately led to the death of Mrs. Santiago. The Kaufmann report merely amplifies the already existing theory of negligence by specifically identifying why the performance was negligent.

Additionally, this court finds that allowing Kaufmann to testify regarding the theory of a negligent technique will allow the case to be decided on its merits and will not unfairly prejudice the defendants. Read as a whole, the amended complaint puts the defendants on notice that they will need to defend against the allegation that Dr. Scaffidi performed the laparoscopy negligently. The fact that the

Kaufmann report proceeds by criticizing the technique used to perform the laparoscopy should not have surprised the defendants. Furthermore, the defendants do not cite any specific prejudice other than their belief that the Kaufmann report introduces a new cause of action beyond the statute of limitations. In contrast to the situation in *Reynolds* where the court found that the amended allegation would have required an expert in a wholly new field, the defendants in this case do not cite any similar prejudice. *See Reynolds* at 1213. For the foregoing reasons, this court finds that the Kaufmann report is not at variance with the pleadings.

3. Whether summary judgment should be granted because the fair scope of the plaintiff's expert report does not support the claim for lack of informed consent:

During oral argument held August 22, 2014, counsel for plaintiff agreed to withdraw the claim for informed consent. Therefore, summary judgment on the claim for informed consent is denied as moot.

4. Whether summary judgment should be granted because the plaintiff's expert report should be barred as improper evidence:

Finally, the defendants argue that the entire Kaufmann report should be barred as improper evidence, because the plaintiff provided Kaufmann with a transcript of an illegally recorded conversation between the defendant, Scaffidi, and the plaintiff's family. The defendants further note that the basis of the statement, contained in the Kaufmann report, "...and in conversations with the family, there was a description of the use of a Veress needle," could only have been obtained from the illegal recording. The defendants cite the court to the Wiretapping and Electronic

Surveillance Control Act, 18 Pa.C.S.A. § 5701 *et seq.*, to establish the illegality of the recording. Regardless, the defendants have not indicated how the mere knowledge of the recorded conversation irreparably taints the report and testimony of Kaufmann. Furthermore, the potentially illegally obtained information does not seriously impact the substance of the Kaufmann report. Because of the limited impact of the illegally obtained information and the great potential for prejudice to the plaintiff were the court to bar the entire report, this court declines to grant summary judgment on that basis. Any issues regarding the admissibility of illegally obtained information are deferred to trial.

## III. Conclusion

Pursuant to the reasons and analysis contained in the above opinion, summary judgment is granted in part and denied in part as follows:

1. The portion of the motion seeking summary judgment on the basis that the fair scope of the plaintiff's expert report does not support the claims for negligence is granted in part and denied in part as follows:

a. The portion seeking summary judgment as to all claims of negligence other than negligence for an improper technique or position, including the claim that the decision to perform the surgery was negligent, is granted and those claims are dismissed with prejudice;

b. The portion seeking summary judgment as to the claim alleging negligence for an improper technique or position is denied and the plaintiff will be permitted to proceed on this theory alone;

2. The portion of the motion seeking summary judgment on the basis that the theory of negligence for an allegedly improper technique or position is at variance with the pleadings is denied;

3. It appearing that the plaintiff has withdrawn her claim for lack of informed consent, the portion of the motion seeking summary judgment on the basis that the fair scope of the plaintiff's expert report does not support the claim for lack of informed consent is denied as moot;[1] and

4. The portion of the motion seeking summary judgment on the basis that the plaintiff's expert report should be barred as improper evidence is denied.

## ORDER

And now, this 10th day of October, 2014, upon consideration of the motion for summary judgment of defendants, filed on March 12, 2014, the new matter contained in the response of defendants, John J. Scaffidi, Jr., M.D. and Total Womens Health Care, Inc., to plaintiff's motion for reconsideration, the plaintiff's responses thereto, the briefs of the parties, and argument held August 22, 2014;

It is hereby ordered, for the reasons set forth in the accompanying opinion, that summary judgment is granted in part and denied in part as follows:

1. The portion of the motion seeking summary judgment on the basis that the fair scope of the plaintiff's expert

---

1. Plaintiff orally agreed to withdraw the claim for lack of informed consent at argument held August 22, 2014.

report does not support the claims for negligence is granted in part and denied in part as follows:

a. The portion seeking summary judgment as to all claims of negligence other than negligence for an improper technique or position, including the claim that the decision to perform the surgery was negligent, is granted and those claims are dismissed with prejudice;

b. The portion seeking summary judgment as to the claim alleging negligence for an improper technique or position is denied and the plaintiff will be permitted to proceed on this theory alone;

2. The portion of the motion seeking summary judgment on the basis that the theory of negligence for an allegedly improper technique or position is at variance with the pleadings is denied;

3. It appearing that the plaintiff has withdrawn her claim for lack of informed consent, the portion of the motion seeking summary judgment on the basis that the fair scope of the plaintiff's expert report does not support the claim for lack of informed consent is denied as moot;[2] and

4. The portion of the motion seeking summary judgment on the basis that the plaintiff's expert report should be barred as improper evidence is denied.

---

2. Plaintiff orally agreed to withdraw the claim for lack of informed consent at argument held August 22, 2014.