**Martin JACKSON and Marianne Jackson, Appellants**

v.

**The BOARD OF ASSESSMENT APPEALS OF CUMBERLAND COUNTY.**

Commonwealth Court of Pennsylvania.

Argued April 8, 2008.

Decided June 5, 2008.

Michael J. Pykosh, Camp Hill, for appellants.

Stephen D. Tiley, Carlisle, for appellee.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In this tax assessment appeal, Martin Jackson and Marianne Jackson (Taxpayers) appeal an order of the Court of Common Pleas of Cumberland County (trial court) establishing a $2,396,180 fair market value for their newly constructed home (Property) for tax assessment purposes. The dispute here primarily relates to the value assigned the Property's "elaborately finished basement." On appeal, Taxpayers assert error in the trial court's asserted duplication of the basement's valuation; the trial court's valuation of the Property's basement in the same manner as its main living areas; and, the trial court's overall Property valuation for tax assessment purposes. Discerning no error, we affirm.

Taxpayers built the Property in 2005. It is located on 3.54 acres of land in Cumberland County and is accessible to all local support facilities. The two-story home consists of 17 rooms and boasts 8,263–8,719 square feet of living space on the two main floors. Significant here, the Property's basement, an additional 4,402–4,963 square feet, is finished in the same manner and workmanship as the two main living floors. In addition to the large living areas, the Property's other amenities include four fireplaces; a wine cellar; an exercise room; a walkout basement; a stone patio; a balcony, an iron fence, an in-ground pool; a full-size basketball court; a macadam driveway; a four-car garage; and a covered porch-gazebo outdoor living area.

In May 2006, the Cumberland County Assessment Office (Assessment Office) placed a fair market value of $3,156,810 on the Property for tax assessment purposes. Taxpayers timely appealed the assessment to the Cumberland County Board of Assessment Appeals (Assessment Board), which reduced the Property's fair market

value to $2,750,270. Taxpayers appealed to the trial court.

■■■ At hearing before the trial court, the Assessment Board offered into evidence its tax assessment record. To rebut the presumed validity of the tax assessment records, Taxpayers presented the testimony of their real estate expert (Taxpayers' expert). He utilized the comparable sales approach to determine the Property's fair market value.[1] Based on four comparable sales, Taxpayers' expert adopted a $200 per square foot standard for the main two living floors. To account for the finished area of the Property's basement, Taxpayers' expert added $100,000 to his valuation. Conceding the Property cost Taxpayers nearly $4 million to build, the expert nevertheless valued the Property at $2 million.

As additional support for his appraisal, Taxpayers' expert emphasized that no other single family residence in Cumberland County has ever sold for more than $2 million. He also cited statistics regarding the income necessary to purchase a home of this value and the number of County residents who earn more than $250,000 per year. Finally, Taxpayers' expert opined at least one of the Property's amenities, the full-size basketball court, may detract from resale.

For its part, the Assessment Board offered the testimony of its expert who established the Property's original fair market value (Board's expert). She likewise used the comparable sales approach. Locating three comparable sales, the Board's expert identified a $250 per square foot standard for the main living areas. For the basement, she utilized a $75 per square foot standard. In addition, the Board's expert placed added values on the Property for the walkout basement, the basketball court, the outdoor living area, the view, and its superior construction. The Board's expert valued the Property at $2,750,000 under this approach.[2]

In the first of two well-written and thorough opinions, the trial court[3] established the Property's fair market value for tax assessment purposes as $2,396,180. At the outset, the trial court noted the experts' agreement the Property is overbuilt and no other County home represents a true comparable. The trial court also noted the experts' disagreement as to the extent of the finished basement. Taxpayers' expert testified 73%, or 4,402 square feet, of the basement is finished. Conversely, the

1. Section 402(a) of The General County Assessment Law (Assessment Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–402(a), identifies three methods of property valuation that must be considered in conjunction with one another when arriving at fair market value for assessment purposes: cost approach, income approach and comparable sales approach. *Id.* The cost approach considers reproduction or replacement costs of the property, less depreciation and obsolescence. *In re Appeal of Prop. of Cynwyd Invs.*, 679 A.2d 304 (Pa.Cmwlth.1996). The income approach determines fair market value by dividing the subject property's annual net rental income by an investment rate of return. *Id.* The comparable sales approach compares the subject property to similar properties with

consideration given to size, age, physical condition, location and other factors. *Id.* Here, Taxpayers' expert rejected the income and cost approaches to valuation, stating the income approach is not a reliable method to value single family residences, and the cost approach was not appropriate where, as here, the property is overbuilt.

2. The Board's expert also determined the Property's value under the cost approach using the Property's building permits. Under this approach, she valued the Property at $3,925,373.

3. The Honorable M.L. Ebert, Jr., presided.

Board's expert stated 4,963 square feet of the basement is finished.

Concluding both experts were well-qualified and credible, the trial court thereafter made adjustments to their respective Property valuations. These adjustments ultimately resulted in a trial court valuation between the valuations expressed by the respective expert witnesses.

In particular, the trial court adjusted the Board's expert's appraisal to exclude the expert's added value for the walkout basement, the view, the basketball court, and the superior construction. The trial court's adjustments to the Board's expert's appraisal resulted in a fair market value of $2,435,000.

Although it disagreed with Taxpayers' expert's $2 million appraisal, as more fully discussed hereafter, the trial court used that figure as a starting point for describing its adjustments. The trial court rejected the expert's use of an unsupported blanket sum to value the basement. The court cited the basement's "beauty, utility, and superior quality" to justify utilization of a cost per square foot valuation for the basement. The trial court found the Board's expert's $75 per square foot valuation too low, and compared that to the $117 per square foot actual cost of construction, to arrive at a $90 per square foot valuation for the basement. Accepting Taxpayers' expert's testimony that 4,402 square feet of the basement is finished, the trial court determined the Property's fair market value to be $2,396,180.

Of further import, the trial court recognized Taxpayers' expert's testimony of limited demand for such a home in Cumberland County. The trial court, however, rejected Taxpayers' assertions this fact determines the Property's fair market value, stating

> [t]o follow such a blind guide would mean that no matter how large or magnificent a home one built, the value could never be more than $2,000,000 in this [C]ounty. While a house has not yet sold for such a price, there is no credible evidence to show that this home would not sell for more, considering its truly superior quality and grandeur.

Trial Ct. Slip Op., 8/27/07, at 8. In conclusion, the trial court explained:

> [h]aving considered both assessments in light of the current market status, we find a reasonable assessment of the [Property] to be $2,396,180. *This figure accounts for the discrepancies in the subjective assessments between two experts and is, in our opinion, a reasonable and prudent assessment of what a buyer would be willing to pay for the home given its quality and location.*

*Id.* (Emphasis added.)

■■■■ Taxpayers appealed to this Court.[4] Upon receipt of Taxpayers' notice of appeal, the trial court directed Taxpayers to file a concise statement of matters complained of on appeal pursuant to Pa. R.A.P.1925(b). In turn, the trial court issued a second detailed opinion amplifying its rationale and addressing the issues Taxpayers raised in their 1925(b) statement.

In this appeal, Taxpayers assign three errors to the trial court's determination of fair market value. First, the court erred by adding the basement's separate valuation to Taxpayers' expert's appraisal where

---

4. Our review of tax assessment appeals is limited to determining whether errors of law were committed, an abuse of discretion occurred, or constitutional rights were violated. *Green v. Schuylkill County Bd. of Assessment Appeals,* 565 Pa. 185, 772 A.2d 419 (2001). While the weight of the evidence is before the appellate court for review, the trial court's findings are entitled to great weight and will be reversed only for clear error. *Id.*

his appraisal value included the basement, thus double-counting the basement value. Second, the court erred by valuing the basement in the same manner as the main living areas. Third, the court erred by placing a fair market value on the Property that exceeds any other County property by nearly three-quarters of a million dollars. We reject each of Taxpayers' assertions.

## A.

Preliminarily, we note Section 402(a) of the Assessment Law requires property to be assessed at its fair market value. 72 P.S. § 5020–402(a). Actual value means fair market value. In turn, fair market value is defined as a "price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *F & M Schaeffer Brewing Co. v. Lehigh County Bd. of Appeals,* 530 Pa. 451, 457, 610 A.2d 1, 3 (1992).

Procedurally, the taxing authority first presents its assessment records into evidence. *Koppel Steel Corp. v. Bd. of Assessment Appeals of Beaver County,* 849 A.2d 303 (Pa.Cmwlth.2004). This establishes the presumed validity of the assessment. *Id.* The burden then shifts to the taxpayer to present sufficient competent, credible and relevant evidence of the property's fair market value to overcome the taxing authority's assessment records. *Id.* If the taxpayer meets this burden, the tax assessment record loses the weight previously afforded to it. *In re Assid,* 842 A.2d 995 (Pa.Cmwlth.2004). Where the taxpayer presents such evidence, the taxing authority may no longer rely on the assessment record unless it is willing to risk having the trial court believe the taxpayer's proof. *Koppel Steel Corp.* Where the

taxing authority presents rebuttal evidence, the court must determine the weight to be afforded all the evidence. *Id.*

In addition, the trial court, hearing the matter anew, is the fact-finder in tax assessment matters. *Green v. Schuylkill County Bd. of Assessment Appeals,* 565 Pa. 185, 772 A.2d 419 (2001). When presented with conflicting experts, both of whom are found to be competent and credible, the fact-finder may determine the fair market value of the property lies somewhere between the values reached by the competing experts. *Id.; Westinghouse Elec. Corp. v. Bd. of Prop. Assessment, Appeal & Review of Allegheny County,* 539 Pa. 453, 652 A.2d 1306 (1995).

## B.

Taxpayers first assert the trial court erred by adding the basement's value to their expert's appraisal where his fair market value included the basement. As noted above, Taxpayers' expert determined a fair market value of $2 million, which included $100,000 for the basement. Taxpayers essentially claim the trial court's valuation included the basement twice.

There are several reasons to reject Taxpayers' claim. First, their position is based on the faulty premise that the trial court accepted their expert's $2 million valuation as the Property's fair market value. Contrary to this assertion, however, the trial court specifically rejected Taxpayers' position the Property could not be valued more than $2 million as artificially low. Trial Ct. Slip Ops., 8/27/07 at 8; 11/14/07 at 7. Rather, the trial court found Taxpayers' expert appraisal too low based on speculation that no home in the County could sell for more than $2 million. The expert's opinion was constrained by the comparable sales, which the trial court re-

jected as determinative of the price for which the Property could be sold. Trial Ct. Slip Ops., 8/27/07 at 7–8; 11/14/07 at 7–8.

In addition, Taxpayers' position assumes the trial court accepted the underlying calculations upon which their expert based his appraisal. We disagree with that assumption. There is nothing suggesting the trial court credited Taxpayers' expert's underlying data. For example, the experts disagreed as to the Property's total square footage on the two main floors. Taxpayers' expert used 8,263 square feet, and the Board's expert used 8,719 square feet in their respective calculations. Reproduced Record (R.R.) at 31, 76. The trial court did not specifically adopt either figure, but the difference in value amounts to slightly more than $91,000 (456 square feet × $200/square foot = $91,200). Considering this, we cannot conclude the trial court accepted Taxpayers' expert's appraisal as the Property's fair market value and then added an additional sum to account for the basement.

Finally, the trial court considered the testimony of the competing experts, and found them competent and credible. Based on this determination, the trial court concluded the fair market value of the Property was somewhere between the values presented by the Taxpayers and the Board. Trial Ct. Slip. Ops., 8/27/07 at 8; 11/14/07 at 6. Such a finding is appropriate when a trial court is presented with conflicting testimony by equally credible experts. *Green; Westinghouse Elec.*

For the above reasons, we reject Taxpayers' claim the trial court's fair market value includes the basement's value twice.

## C.

Taxpayers also assign error in the trial court's valuation of the basement in the same manner as the rest of the Prop-

erty's living areas. Taxpayers urge adoption of their expert's $100,000 valuation of the basement. Absent the quality of the work here, Taxpayers contend, the basement would otherwise not warrant an adjustment.

Taxpayers' argument fails. Taxpayers had the burden of persuading the trial court as to the most appropriate methodology for valuation purposes. *Hershey Entm't & Resorts Co. v. Dauphin County Bd. of Assessment Appeals,* 874 A.2d 702 (Pa.Cmwlth.2005); *Penn's Grant Assocs. v. Northampton County Bd. of Assessment Appeals,* 733 A.2d 23 (Pa.Cmwlth.1999). This included persuading the trial court their method of valuing the basement was the most appropriate method for doing so.

As noted in its 1925(b) opinion, however, the trial court determined the finished basement cannot be valued as a typical basement. The basement, in the trial court's opinion, "was extraordinary" and contained "more similarities between this basement and the two main living floors than do typical basements, in use, craftsmanship, and construction." Trial Ct. Slip Op., 11/14/07 at 8. Recognizing industry standards typically value basements less than main living areas, the trial court nevertheless concluded the basement here to be "so superior" that a specific sum did not accurately reflect the basement value. *Id.* at 9.

Furthermore, the trial court did not blindly accept either expert's valuation. The court concluded the basement's value "was in between the values presented by the parties" and, thus, it accepted "part of each expert's testimony." *Id.* at 6–7. In particular, the trial court accepted Taxpayers' expert's testimony the basement's finished area equals 4,402 square feet. To determine value, however, the trial court

accepted the Board's expert's method of valuation.

In other words, Taxpayers failed to persuade the trial court that a specific sum represented the basement's value for fair market value purposes. *Hershey Ent'mt & Resorts Group; Penn's Grant Assocs.* As fact-finder, the trial court was free to reject Taxpayers' approach to valuing the basement. *Green.* No error is therefore apparent.

### D.

 In their final argument, Taxpayers assert error in the trial court's determination insofar as it establishes a fair market value nearly three-quarters of a million dollars more than any other single family residence in Cumberland County.

We again look to the trial court's well-written opinions to conclude Taxpayers' argument lacks merit. As previously discussed, the trial court found Taxpayers' argument speculative, noting the Property here exceeds all other homes in the County in quality and grandeur based on its square footage, amenities, and quality craftsmanship. Trial Ct. Slip Op., 8/27/07, at 8. Further, the parties' experts agreed no other County home is truly comparable.

In *Green,* the Supreme Court discussed similar commentary by an expert witness. There, the taxpayer's expert valued residential property at $360,000. In his testimony, the expert noted difficulty in locating comparable sales because newly constructed comparables sales had not sold at the time of his valuation. The expert also testified no one had ever purchased another parcel for more than his valuation of the subject property. In *dictum,* the Supreme Court stated that while comparable sales may have been

hard to locate, the fact such construction occurred indicated the expert's estimation of the market for such properties was not universally shared.

In view of the Supreme Court's observation, the trial court's finding that Taxpayers' expert's testimony is speculative on this point is persuasive. The Property has many amenities not found in the average residence, and has 1,000 square feet more in main living space than Taxpayers' closest comparable sale.[5] We conclude these facts sufficiently support the trial court's determination.

### E.

In summary, the trial court conducted an exhaustive examination of the record before it. It twice systematically and comprehensively explained its basis for establishing the Property's fair market value. Its conclusions are well-supported; accordingly, we affirm.

### *ORDER*

AND NOW, this 5th day of June, 2008, the order of the Court of Common Pleas of Cumberland County is **AFFIRMED.**

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent because I would reverse the order of the Court of Common Pleas of Cumberland County to the extent that it failed to adjust the fair market value of Appellants' residence by taking into account their appraiser's (Mr. Rothman's) $100,000 valuation of the finished basement in the property. The trial court accepted Mr. Rothman's opinion that 4402 square feet of the basement is finished and adjusted Mr. Rothman's valuation of the

---

5. This figure is based on the Board's expert's testimony the main living floors have 8,719 square feet of living space. *See* Assessment Board Ex. 6.

residence from $2,000,000 to $2,396,180 based on the trial court's applying a $90 per square foot assessment to the basement's 4402 square footage. Appellee's expert (Ms. Stouffer) placed a lower valuation on the basement's square footage at $75 per square foot, which the trial court rejected. I am convinced that the trial court erred when it established a fair market value for the basement of $396,180 and then added this amount to Mr. Rothman's $2,000,000 valuation when he in fact already had included $100,000 for the basement area in his appraisal.

Appellant argues that under the Uniform Residential Appraisal Report Guidelines, a single-family home in Central Pennsylvania without the quality of Appellants' basement would not require adjustment. Notwithstanding this point, Appellant's complaint is that the trial court committed an error of law and/or abuse of its discretion when it effectively imposed a double valuation for Appellants' basement area, and I agree. Had the trial court properly accounted for the fact that Mr. Rothman's $2,000,000 valuation included $100,000 for the basement area it would have correctly set a **$2,296,180** fair market value for the property instead of $2,396,-180.

This Court must determine in its review of this tax assessment appeal whether the trial court abused its discretion, committed an error of law or made a decision that is unsupported by the evidence. *Expressway 95 Bus. Ctr., LP v. Bucks County Board of Assessment*, 921 A.2d 70 (Pa. Cmwlth.2007). After receiving the evidence, the trial court makes an independent determination of the fair market value of the subject property on the basis of the competent, credible and relevant evidence presented in the case. *Id.* In the case *sub judice*, the trial court made a decision that is not supported by the evi-

dence when it, first, arrived at an amount per square footage for the basement which neither expert presented, and, second, when it arrived at a valuation for the basement area that reflects a figure determined by the trial court based on its own and includes an amount already incorporated into Mr. Rothman's appraisal. This double counting, or double valuation, for the basement square footage constitutes an abuse of the trial court's discretion, and it is neither supported by the evidence nor by the law. I therefore dissent on this issue.