IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Upper Merion Area School District | : | |
| | : | |
| v. | : | |
| | : | |
| King of Prussia Associates, Montgomery County Board of Assessment Appeals, Upper Merion Township, and Montgomery County | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Upper Merion Area School District | : | |
| | : | |
| v. | : | |
| | : | |
| Robert M. Segal and Stephen Frost, Trustees, n/k/a King of Prussia Associates, Montgomery County Board of Assessment Appeals, Upper Merion Township, and Montgomery County | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: Upper Merion Area School District | : | No. 800 C.D. 2024 |
| | : | Argued: February 3, 2026 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STELLA M. TSAI, Judge

OPINION
BY JUDGE FIZZANO CANNON                    FILED: March 17, 2026


Upper Merion Area School District (School District) appeals from an order of the Court of Common Pleas of Montgomery County (Trial Court) entered on February 20, 2024 in four consolidated property tax assessment matters. The School District argues that the Trial Court erred in concluding that the School District violated constitutional tax uniformity principles in selecting properties in the

King of Prussia Mall (Mall) for property tax assessment appeals. Upon review, we affirm the Trial Court's order.

## I. Background

In its opinion accompanying its February 20, 2024 order (Trial Court Opinion), the Trial Court found that, in 2012, the School District filed assessment appeals with the Montgomery County Board of Assessment Appeals (Board) regarding several properties in the Mall. Reproduced Record (R.R.) at 615a. King of Prussia Associates (KOPA), the owner of the Mall, intervened in the assessment appeals.[1] *Id.* at 615a-16a.

In 2011, the School District enacted Policy 605.1 for the purpose of providing guidance on the financial criteria the School District would use in selecting properties for filing real property tax assessment appeals. R.R. at 618a. Policy 605.1 provided:

> 605.1. DISTRICT-INITIATED REAL ESTATE TAX ASSESSMENT APPEAL
>
> 1. Purpose
>
> The Board of School Directors has the responsibility to equalize the cost of providing a quality education among all property taxpayers. The Board is limited in its ability to do this by property assessment procedures and an established appeal process operates under the jurisdiction of Montgomery County Government.

---

[1] The other real property taxing bodies, Upper Merion Township and Montgomery County, also intervened, but neither entity filed a brief in this Court.

2. Guidelines

Where, in the interest of all of property taxpayers, an appeal can reasonably be made the Board will do so under the following conditions:

1. The Business Administrator shall annually review recent real estate transactions and/or work with a third party firm to identify properties that may be under assessed.

2. Annually, but not later than the Board's May Finance Committee Meeting, the administration shall provide to the Finance Committee a list of those properties which have been identified as possible candidates for a district-initiated real estate tax assessment appeal for the current year. Only under unusual circumstances, and with the approval of the Board, shall a property with an assessment of $500,000 or less be considered for a district-initiated assessment appeal.

3. Upon recommendation of the Finance Committee, a resolution shall be put before the Board approving tax assessment appeals on such properties as may be appropriate. Notification will then be given to the Montgomery County Assessment Office of the district's intent to appeal the property's assessment. The annual appeal deadline is September 1st.

R.R. at 201a.

Policy 605.1 was drafted by Steven Skrocki (Skrocki), then the School District's Business Administrator. R.R. at 617a. As of the date of the Trial Court's decision in this matter, the School District had filed 82 tax assessment appeals, all of which related to commercial or industrial properties and none of which related to single family residential properties despite the existence of such properties falling within the financial guidelines of Policy 605.1. *Id.* at 618a-19a. In fact, the Trial Court found as a fact that the School District acknowledged that Policy 605.1 "was designed specifically to exclude single family residential properties from appeals."

3

*Id.* at 619a. The School District hired Keystone Realty Advisors (Keystone) to help select properties for tax assessment appeals. *Id.* Skrocki understood that Keystone would focus on commercial and industrial properties; Keystone did not evaluate any single family residential properties and did not recommend any such properties to the School District for tax assessment appeals. *Id.* at 620a.

Keystone recommended several properties for tax assessment appeals, five of which were parcels in the Mall that were owned by KOPA. R.R. at 621a. Skrocki had previously identified those properties independently in 2011 by examining property sales information and interim tax assessments regarding commercial and industrial properties. *Id.* at 161a-65a, 195a-99a, 173a-74a & 621a. Skrocki did not examine information regarding single family residential properties. *Id.* at 621a.

In 2012, the School District filed tax assessment appeals that included four Mall parcels. R.R. at 615a-16a & 621a. The assessment appeals resulted in no changes to the assessments. *Id.* at 616a. The School District appealed to the Trial Court, which consolidated the appeals. *Id*

The Trial Court determined that the School District's selections of properties for tax assessment appeals under Policy 605.1 and the School District's implementation of that policy violated the tax uniformity provision of article VIII, section 1 of the Pennsylvania Constitution, which provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1 (Uniformity Clause); *see also* R.R. at 623a-27a. Following the Trial Court's denial of the School District's assessment appeals regarding the Mall properties, the School District timely appealed to this Court.

4

## II. Issues

On appeal,[2] the School District presents three questions for review, which we consolidate into two issues and summarize as follows.[3]

[2] This Court has previously explained:

> Our review of tax assessment appeals is limited to determining whether errors of law were committed, an abuse of discretion occurred, or constitutional rights were violated. *Green v. Schuylkill [Cnty.] Bd. of Assessment Appeals*, . . . 772 A.2d 419 ([Pa.] 2001); *Jackson v. Bd. of Assessment Appeals of Cumberland [Cnty.]*, 950 A.2d 1081 (Pa. Cmwlth. 2008). While the weight of the evidence is before the appellate court for review, the trial court's findings are entitled to great weight and will be reversed only for clear error. *Id.*

*Parkview Ct. Assocs. v. Del. Cnty. Bd. of Assessment Appeals*, 959 A.2d 515, 519 n.8 (Pa. Cmwlth. 2008). "Clear error" occurs only where a trial court's findings after a bench trial are "clearly, plainly, palpably, or manifestly wrong or erroneous." 5 C.J.S. *Appeal and Error* § 958 (2025). This Court has observed that "a judge should not label a prior order to be 'clearly erroneous' merely because he disagrees with that order, but rather, it must be virtually undisputable that the prior judge erred." *Bates v. Del. Cnty. Prison Emps. Indep. Union*, 150 A.3d 121, 130 (Pa. Cmwlth. 2016) (quoting *Zane v. Friends Hosp.*, 836 A.2d 25, 34 (Pa. 2003) (Nigro, J., concurring) (additional quotation marks omitted)). Although *Bates* related to the coordinate jurisdiction rule, we apply its definition of clear error here as well.

[3] In full, the School District's Questions Presented and suggested dispositions were:

> A. Whether the Trial Court Erred In Declaring that How the Mall was Identified was Immaterial and Thereby Wholly Ignored The Uncontroverted Evidence That The Appeal Of The Mall Properties Was A Result Of The [School District's] Business Manager Identifying The Transfer of an Interest in the Mall Properties Based On Business Journals Prior To Enactment Of Policy 605. 1, And Despite Its Exclusion From Involvement or Compensation To The [School District's] Real Estate Consultant.
>
> Answer: Yes
>
> B. Whether The Policy and Methodology Utilized By [The School District] in Selecting Properties for Tax Assessment Appeals was Not Arbitrary and Did Not Violate The Uniformity Clause.

First, the School District maintains the Trial Court erred in finding that how the School District initially identified the Mall as a possible assessment appeal target was immaterial. The School District points to its evidence that its decision to pursue the assessment appeals regarding the Mall properties originally arose from articles in business journals concerning the pending sale of half interests in those properties, which the School District's Business Administrator first noted in May 2011, prior to the School District's enactment of Policy 605.1 in July 2011. The School District also relies on the exclusion of the Mall properties from Keystone's consulting contract with the School District, arguing that the exclusion was negotiated in recognition that the School District had already identified the Mall properties for possible assessment appeals before entering into the Keystone contract. The School District contends that this exclusion constitutes further evidence that the Mall properties were identified before the enactment of Policy 605.1, which occurred contemporaneously with the execution of the Keystone contract in July 2011.

Second, the School District maintains that the Trial Court erred both factually and legally in determining that the School District's implementation of Policy 605.1 violated the Uniformity Clause. Factually, the School District insists

---

Answer: Yes

C. Whether The Trial Court's Finding that [School District] Violated the Uniformity Clause is Based on a Flawed Understanding of the[] Pennsylvania Supreme Court's Decision in the *Valley Forge Tower* case and its Progeny; and the Considerations that Go into Evaluating Whether a School District Has Exercised the Broad Powers it Has to File Assessment Appeals so Long as Property Classification Is Not Utilized as a Criteri[on] in Doing So.

Answer: Yes

Sch. Dist. Br. at 4-5 (italics added).

the Trial Court erred in its weighing of the evidence and its resultant finding that the School District purposely excluded all residential properties from consideration for tax assessment appeals. Legally, the School District asserts that the Trial Court misunderstood the import of the Pennsylvania Supreme Court's decision in *Valley Forge Towers v. Upper Merion Area School District*, 163 A.3d 962 (Pa. 2017), and misapplied that decision's reasoning in concluding that Policy 605.1 violated the Uniformity Clause.

## III. Discussion

### A. The School District's Identification of the Mall Properties

The School District maintains that it identified the Mall properties for potential assessment appeals through Skrocki, who spotted business journal articles concerning the pending sale of a half interest in the Mall and the expected sale price. The School District points to evidence that Skrocki first noted the journal articles in May 2011, prior to the School District's enactment of Policy 605.1 in July 2011, even though the appeals were not actually filed until 2012. Implicit in the School District's argument is a suggestion that if the Mall properties were identified for assessment appeals prior to enactment of Policy 605.1, they could not have been selected and appealed pursuant to Policy 605.1. Consequently, any alleged constitutional infirmity of Policy 605.1 would not affect the School District's assessment appeals concerning the Mall properties.

There appears to be no dispute that the School District had already identified the Mall properties for possible assessment appeals before the enactment of Policy 605.1. *See* R.R. at 161a-65a, 195a-99a & 173a-74a. A pretrial order of the Trial Court specifically observed that the School District's decision to initiate

7

the assessment appeals arose from the journal articles spotted by Skrocki. *Id.* at 109a-10a. Moreover, the School District's consulting agreement with Keystone recognized that the School District had already identified the Mall properties and that Keystone would not be compensated regarding any assessment appeals the School District might pursue regarding those properties. *Id.* at 110a, 1014a-15a, 1021a-22a, 2533a & 2530a-40a.

Ultimately, however, the Trial Court opined that the source of the District's information leading to its assessment appeals regarding the Mall properties was immaterial. In its first assertion of error, the School District contends the Trial Court erred in that determination. We disagree.

Skrocki testified that Policy 605.1 was under consideration in the same time period during which he identified the Mall properties as possible assessment appeal candidates. R.R. at 1024a-25a. He acknowledged that the School District would have considered the $500,000 threshold of Policy 605.1 if the policy had been in place. *Id.* Skrocki explained that he knew from the journal articles that the Mall property valuation at issue was between $1,000,000 and $2,000,000 and, thus, that the assessed values of the Mall property interests being sold would exceed the $500,000 threshold in Policy 605.1. *Id.* at 1025a & 1077a.

Significantly, although the School District enacted Policy 605.1 in July 2011, the School District did not file assessment appeals relating to the Mall properties until 2012. R.R. at 110a. Skrocki testified that the School District was not prepared to pursue assessment appeals concerning the Mall properties in 2011 because the School District was still gathering necessary information and the property sale of the Mall properties had not yet closed. *Id.* at 1025a-34a & 1077a-81a. Further, notwithstanding Skrocki's initial identification of the Mall properties

8

for appeal consideration in 2011, the School District's current Business Administrator testified that every assessment appeal undertaken by the School District since the enactment of Policy 605.1 on July 5, 2011 has been initiated pursuant to Policy 605.1 *Id.* at 1148a. Skrocki similarly acknowledged that the presentation of assessment appeal properties to the School District for 2012 appeals, including the Mall properties, was done in accordance with Policy 605.1. *Id.* at 1040a-43a.

In short, regardless of how the School District first identified and selected the Mall properties for potential assessment appeals, it did not file those appeals until 2012, the year after the enactment of Policy 605.1. The District's own witnesses acknowledged that all assessment appeals initiated after the enactment of Policy 605.1, including the assessment appeals regarding the Mall properties, were pursued in accordance with Policy 605.1. Thus, the Trial Court did not err in opining that the School District's initial source of information identifying the Mall properties was immaterial to the applicability of Policy 605.1.

## B. Policy 605.1 and the Uniformity Clause
### 1. Weight of the Evidence

The School District posits that the Trial Court erred in its weighing of the evidence and its resultant factual finding that the School District purposely, and unconstitutionally, excluded all residential properties from consideration for tax assessment appeals. As noted above, this Court may reverse the Trial Court's findings of fact only for clear error. *See Green v. Schuylkill* [*Cnty.*] *Bd. of Assessment Appeals*, 772 A.2d 419 (Pa. 2001); *Jackson v. Bd. of Assessment Appeals of Cumberland Cnty.*, 950 A.2d 1081 (Pa. Cmwlth. 2008). We discern no clear error

9

here. To the contrary, the record includes copious evidence in support of the Trial Court's findings concerning the School District's deliberate exclusion of residential properties from consideration for tax assessment appeals.

The School District presented testimony indicating that the $500,000 threshold valuation figure in Policy 605.1 was based on return on investment, weighing the likely tax receipts of a successful assessment appeal against the cost of litigation. R.R. at 154a. However, Skrocki also acknowledged that the School District had not pursued a tax assessment appeal against any residential property during his employment there. *Id.* at 789a & 1052a. Skrocki stated further that he "frequently" reached out to the county's commercial and industrial property assessor to check on interim assessments but did not even know who the residential assessor was. *Id.* at 960a-65a. He conceded that Keystone did not mention any work to him regarding residential properties and that he knew Keystone's focus was on commercial and industrial properties. *Id.* at 799a and 807a-09a. The January 2011 minutes of a joint meeting of the School District, Bridgeport Borough, and Upper Merion Township reflected that Skrocki answered a question about tax assessment appeals by stating that the new methodology under Policy 605.1 would look aggressively at commercial and industrial properties; Skrocki made no mention of residential properties and did not state that all types of properties would be reviewed. *Id.* at 810a-13a & 2968a. Skrocki admitted that the February 16, 2011 meeting minutes of the Finance Committee indicated that tax assessment appeals to date had all related to commercial properties and that he repeatedly told the Board, the Finance Committee, and the public that Keystone was focusing on commercial properties for assessment appeals. *Id.* at 813a-16a, 818a & 2686a. Skrocki testified that he repeatedly told the Board, the Finance Committee, and the public that the

10

intent of Policy 605.1 was to go after commercial and industrial properties that were underassessed and not to go after residential properties. *Id.* at 903a-05a, 929a, 937a-38a & 940a-42a; *see also id.* at 2653a, 2721a, 2920a-21a & 2848a. Indeed, Skrocki stated that the School District enacted Policy 605.1 as "an assessment policy to preclude appeals against most residential property owners." *Id.* at 951a-52a; *see also id.* at 2635a. Notably, Skrocki stated that one Board member voted against Policy 605.1 because of concerns that it focused on commercial and industrial properties and excluded single family residential properties. *Id.* at 909a & 911a.

As noted above, a court will not find clear error merely because it disagrees with the order being reviewed; "it must be virtually undisputable that the prior judge erred." *Bates*, 150 A.3d at 130 (quoting *Zane*, 836 A.2d at 34). In light of the ample record support for the Trial Court's decision here, we cannot say that the Trial Court clearly erred.

In addition, we observe that on May 13, 2021, the Trial Court issued a separate, preliminary opinion and order in response to KOPA's motion for sanctions based on the School District's alleged failure to preserve evidence. R.R. at 107a-22a. The Trial Court granted KOPA's motion in part. Accordingly, the Trial Court found that the School District failed to comply with its preservation duty despite a timely and thorough litigation hold letter issued by KOPA and that KOPA was prejudiced by the School District's failure to comply with the hold letter. *Id.* at 120a. The unpreserved documents included emails pertaining to the formation of Policy 605.1, packets of materials issued to school board members of the School District prior to board meetings during the relevant time period, public blog posts relating to tax assessment appeals, and a "watch list" of properties for potential future tax assessment appeals. *Id.* at 118a-19a. In consequence, the Trial Court authorized the

11

trial judge to draw an adverse inference that the specified documents not preserved by the School District would have been favorable to KOPA on the issue of the School District's alleged violation of the Uniformity Clause. *Id.* at 121a-22a (first citing *Schroeder v. Dep't of Transp.*, 710 A.2d 23, 27 (Pa. 1998); then citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d. Cir. 1994); and then citing *King v. Pittsburgh Water & Sewer Auth.*, 139 A.3d 336, 346-47 (Pa. Cmwlth. 2016)).

The School District has not asserted on appeal before this Court that the Trial Court erred in issuing the May 13, 2021 order, and the Trial Court's opinion on the School District's tax appeal did not state whether any adverse inferences were being drawn. Nevertheless, the School District's observed failure to preserve relevant evidence in the face of a hold letter further supports the absence of clear error in the Trial Court's findings and weighing of the evidence.

### 2. Violation of the Uniformity Clause

In asserting legal error, the School District contends that the Trial Court misunderstood the import of the Pennsylvania Supreme Court's decision in *Valley Forge Towers* and misapplied the reasoning of that decision in concluding that Policy 605.1 violated the Uniformity Clause. We disagree.

In *Valley Forge Towers*, our Supreme Court considered the precise issue presented here, *i.e.*, "whether the Uniformity Clause of the Pennsylvania Constitution permits a taxing authority to selectively appeal only the assessments of commercial properties . . . while choosing not to appeal the assessments of other types of property – most notably, single-family residential homes . . . ." 163 A.3d at 965. Notably, the School District was also the taxing body appealing the tax assessments at issue in *Valley Forge Towers*, Keystone was the consultant that

12

recommended the tax assessment appeals, and KOPA filed an *amicus* brief in that case.

In *Valley Forge Towers*, the School District argued that uniformity could be determined within sub-classifications such as commercial and residential; the School District reasoned that if all properties within a sub-class were treated uniformly regarding selection for tax assessment appeals, uniformity was preserved, and a taxing entity was free to file appeals relating solely to a single sub-class of property, such as commercial properties. 163 A.3d at 973. Our Supreme Court rejected that argument, explaining that

> it [is] an established feature of Pennsylvania uniformity jurisprudence that "all real estate is a constitutionally designated class entitled to uniform treatment and the ratio of assessed value to market value adopted by the taxing authority must be applied equally and uniformly to all real estate within the taxing authority's jurisdiction." *Westinghouse Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cnty.*, . . . 652 A.2d 1306, 1314 ([Pa.] 1995) (citing *McKnight Shopping Ctr., Inc. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cnty.*, . . . 209 A.2d 389 ([Pa.] 1965)); *see also Clifton*[ *v. Allegheny Cnty.*, 969 A.2d 1197, 1212 (Pa. 2009)] ("[T]his Court has consistently interpreted the uniformity requirement of the Pennsylvania Constitution as requiring all real estate to be treated as a single class entitled to uniform treatment."). While this may at first seem incongruous, it is the inevitable result of the circumstance that the Uniformity Clause views all property as a single class and simultaneously incorporates federal Equal Protection guarantees as a constitutional floor.

*Id.* at 973-74.

Notably, our Supreme Court acknowledged that in a taxpayer's assessment appeal, evidence relating to other similar properties in the same sub-class

13

may be considered in determining whether a property is over-assessed. *Valley Forge Towers*, 163 A.3d at 974. Nonetheless, our Supreme Court concluded:

> The observation that these types of proofs are relevant was intended to maintain the longstanding protection of taxpayers from high assessment ratios as compared with those of comparable properties, and to promote harmony with the equal protection principles, not as a means of empowering the government to systematically engage in disparate treatment of sub[-]classifications of property.

*Id.* Therefore, the Supreme Court concluded that "a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type — that is, its use as commercial, apartment complex, single-family residential, industrial, or the like." *Id.* at 978.

The School District insists, however, that this case is not governed by *Valley Forge Towers*, but rather, by this Court's decision in *Coatesville Area School District v. Chester County Board of Assessment Appeals*, 323 A.3d 61 (Pa. Cmwlth. 2024). The School District insists that its use of a monetary threshold of $500,000 was proper and that the tax assessment appeal selection policy approved by this Court in *Coatesville* was similar in "relying on monetary thresholds without reference to property types . . . ." Sch. Dist. Br. at 41-42 (citing *Coatesville*, 323 A.3d at 65-68). The School District also observes that "'the mere fact that a given assessment appeal has not resulted in a single appeal of a residential property does not mean that the policy is being implemented in an unconstitutional manner.'" Sch. Dist. Br. at 43-44 (quoting *Coatesville*, 323 A.3d at 82); *see also Downingtown Area*

14

*Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 303 A.3d 1104, 1117 (Pa. Cmwlth. 2023), *appeal granted*, 320 A.3d 661 (Pa. 2024).[4]

The obvious and fatal flaw in this argument is that here, unlike in *Coatesville*, there were specific factual determinations that the School District and its expert focused on commercial properties for assessment appeals and that Policy 605.1 was largely designed to carry out this purpose. In *Coatesville*, the common pleas court had found as a fact that the school district's use of a $10,000 monetary threshold in its tax assessment appeal selection policy was not intended to discriminate among different types of properties. 323 A.3d at 84; *see also Downingtown*, 303 A.3d at 1117 (explaining that an acceptable tax assessment appeal policy would "not systematically target commercial properties . . ."). By contrast, as discussed above, the School District here expressly intended to avoid targeting any residential properties. Thus, neither *Coatesville* nor *Downingtown* offers any support for the School District's position.

As discussed in the previous subsection, the Trial Court here did not clearly err in finding as fact that the School District intentionally excluded single family residential properties from consideration for tax assessment appeals and, indeed, formulated Policy 605.1 with that intention. Accordingly, we agree with the Trial Court's conclusion that Policy 605.1 violated the Uniformity Clause, PA. CONST. art. VIII, § 1, in that the School District purposefully applied Policy 605.1 so as to appeal only tax assessments of commercial and industrial properties. The

---

[4] The issues as to which appeal was granted by the Pennsylvania Supreme Court in *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 320 A.3d 661 (Pa. 2024), may be paraphrased as (1) whether a school district must appeal all potentially underassessed properties in the school district in order to comply with uniformity requirements and (2) whether there was a factual basis to conclude that the tax assessment appeal policy there was implemented in an arbitrary fashion. *See id.* We note that neither issue appears facially material to the issues here.

15

choice of the Mall properties was part of a plan or pattern of appealing only commercial and industrial property assessments and, as such, violated uniformity.

## IV. Conclusion

Based on the foregoing discussion, the Trial Court's order is affirmed.


_____

CHRISTINE FIZZANO CANNON, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Upper Merion Area School District | : | |
| | : | |
| v. | : | |
| | : | |
| King of Prussia Associates, | : | |
| Montgomery County Board of | : | |
| Assessment Appeals, Upper Merion | : | |
| Township, and Montgomery County | : | |
| | : | |
| Upper Merion Area School District | : | |
| | : | |
| v. | : | |
| | : | |
| Robert M. Segal and Stephen Frost, | : | |
| Trustees, n/k/a King of Prussia | : | |
| Associates, Montgomery County | : | |
| Board of Assessment Appeals, | : | |
| Upper Merion Township, and | : | |
| Montgomery County | : | |
| | : | |
| Appeal of: Upper Merion Area | : | No. 800 C.D. 2024 |
| School District | : | |

# **O R D E R**

AND NOW, this 17th day of March, 2026, the order of the Court of Common Pleas of Montgomery County dated February 20, 2024 is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Merion Area School District : 
                                                  : 
                 v. :   No. 800 C.D. 2024
                                                  :   Argued: February 3, 2026
King of Prussia Associates, : 
Montgomery County Board of : 
Assessment Appeals, Upper Merion : 
Township, and Montgomery County : 
                                                  : 
Upper Merion Area School District : 
                                                  : 
               v. : 
Robert M. Segal and Stephen Frost, : 
Trustees, n/k/a King of Prussia : 
Associates, Montgomery County : 
Board of Assessment Appeals, Upper : 
Merion Township, and Montgomery : 
County : 
                                                  : 
Appeal of: Upper Merion Area School : 
District : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STELLA M. TSAI, Judge

CONCURRING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: March 17, 2026

      I agree with the Majority that, based on the facts found, the Order of the Court of Common Pleas of Montgomery County (trial court) must be affirmed because the Upper Merion Area School District's (School District) application of its property tax assessment appeal policy excluded single-family residential properties from consideration in violation of the Uniformity Clause of the Pennsylvania

Constitution, PA. CONST. art. VIII, § 1.  I write separately only to reconfirm that a school district's use of a "facially property-type-neutral monetary threshold[] do[es] not per se run afoul of the Uniformity Clause." *Coatesville Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 323 A.3d 61, 78 (Pa. Cmwlth. 2024) (en banc). Such thresholds generally "represent school districts' reliance on the commonsense notion that 'the two objectives' of generating revenue on one hand, and ensuring implementation of a taxing system that operates in a nondiscriminatory manner on the other, 'do not necessarily conflict.'"  *Id.* (quoting *Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch. Dist.*, 163 A.3d 962, 980 (Pa. 2017)).  School districts have been given the authority to appeal tax assessments, Section 8855 of the Consolidated County Assessment Law, 53 Pa.C.S. § 8855, and "[f]or that to mean something, school districts must have a means of designing facially neutral, quantitatively grounded policies to create predictability and fairness in a taxing district." *Coatesville*, 323 A.3d at 79.  The violation of the Uniformity Clause in this matter is not based on the use of a facially neutral monetary threshold, but on the evidence that the School District applied its policy to intentionally exclude single-family residential properties from consideration for assessment appeals, making this case distinguishable from that in *Coatesville*.

_____

RENÉE COHN JUBELIRER, President Judge

Judge Tsai joins this Concurring Opinion.